1
2
3
4
5
6
7

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          jsmith@bursor.com

*Attorneys for Plaintiff*

8
9
10
11
12

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19

| | |
|---|---|
| SUSAN JOHNSON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>BLUE NILE, INC. and FULLSTORY, INC.,<br><br>                    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Susan Johnson ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action suit brought against Defendants Blue Nile, Inc. ("Blue Nile") and FullStory, Inc. ("FullStory") (collectively, "Defendants") for wiretapping the electronic communications of visitors to Defendant Blue Nile's website, Bluenile.com (the "Website").  The wiretaps, which are embedded in the computer code on the Website, are used by Defendants to secretly observe and record website visitors' keystrokes, mouse clicks,[1] and other electronic communications, including the entry of Personally Identifiable Information ("PII"), in real time.  By doing so, Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 635, and invaded Plaintiff's and Class Members' privacy rights in violation of the California Constitution.

2.      Between January 2020 and May 2020, Ms. Johnson visited the Website on a monthly basis.  During the visit, Defendants recorded Plaintiff's electronic communications in real time, including Plaintiff's mouse clicks and keystrokes.

3.      Plaintiff brings this action on behalf of herself and a class of all persons whose electronic communications were intercepted through the use of Defendants' wiretaps on the Website.

## THE PARTIES

4.      Plaintiff Susan Johnson is a resident of Novato, California and has an intent to remain there, and is therefore a domiciliary of California.  Between January 2020 and May 2020, prior to the filing of this lawsuit, Ms. Johnson visited the Website on a monthly basis and browsed the jewelry selection on the Website, but did not purchase anything.  Ms. Johnson was in Novato when she visited the website.  During the visit, Ms. Johnson's keystrokes, mouse clicks, and other

---

[1] As used herein, the term "mouse clicks" also refers to "touch gestures" such as the "tap," "swipe," and similar gestures used on touchscreen devices.

1   electronic communications were intercepted in real time and were disclosed to Defendants Blue

2   Nile and FullStory through the wiretap.  Ms. Johnson was unaware at the time that her keystrokes,

3   mouse clicks, and other electronic communications, including the information described above,

4   were being intercepted in real-time and would be disclosed to FullStory, nor did Ms. Johnson

5   consent to the same.

6       5.      Defendant Blue Nile, Inc. is a company incorporated under the laws of Delaware

7   with its principal place of business at 411 1st Avenue South Suite 700, Seattle, Washington 98194.

8       6.      Blue Nile does business throughout California and the entire United States.

9       7.      Blue Nile owns and operates the Website.

10      8.      Defendant FullStory is a Delaware corporation with its principal place of business at

11  1745 Peachtree Street Northwest, Suite G, Atlanta, Georgia 30309.

12      9.      FullStory is a marketing software-as-a-service ("SaaS") company.

13      10.     FullStory provides a feature called "Session Replay," which is at issue here and

14  described more fully below.  At all relevant times here, Blue Nile has used FullStory's "Session

15  Replay" product on the Website.

16                      **JURISDICTION AND VENUE**

17      11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A)

18  because this case is a class action where the aggregate claims of all members of the proposed class

19  are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the

20  proposed class is citizen of state different from at least one Defendant.

21      12.     This Court has personal jurisdiction over Defendants because each of the Defendants

22  have purposefully availed themselves of the laws and benefits of doing business in this State, and

23  Plaintiff's claims arise out of each of the Defendants' forum-related activities.  Furthermore, a

24  substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

25      13.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a

26  substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this

27  District.

28

---

## STATEMENT OF FACTS

**I.**     **Overview Of The Wiretaps**

14.     Defendant FullStory develops a software of the same name that provides marketing analytics.

15.     One of FullStory's features is called "Session Replay," which purports to help businesses improve their website design and customer experience.

16.     Session Replay provides a real-time recording of a user's interactions on a website. FullStory says that "Session replay tools capture things like mouse movements, clicks, typing, scrolling, swiping, tapping, etc."

17.     FullStory touts that Session Replay relies on real video of a user's interactions with a website, or, in another words, a "recorded session."[2]

18.     To demonstrate how Session Replay works, FullStory displays the "recorded session of a fictional user interacting with th[e] [Session Replay] Guide":



[2] https://www.fullstory.com/resources/the-definitive-guide-to-session-replay/.

19.    FullStory describes the above video as follows:

Here you can watch a FullStory session replay of a user—Daniel Falko—flipping through *The Definitive Guide to Session Replay*. **Notice how you can see interactions, mouse movements, clicks, interactions with overlays, and more**—and everything is listed in order in a stream at the right side of the replay. This is what a session replay looks like in the FullStory app.[3]

20.    FullStory's promotional video shows the behind-the-scenes features of the software. First, FullStory lets you view a list of users who visited the website, as well as the time they spent on the website:

21.    Upon clicking one of these "sessions," FullStory lets a company view the video of a user's interaction with a website, including mouse movements, clicks, interactions with overlays, keystrokes, geographic location, IP address, and more "to see the real customer experience behind the data":

//

//

//

//

---

[3] https://www.FullStory.com/resources/the-definitive-guide-to-session-replay/#finding-the-right-session-replay-tool (emphasis added).



22.     FullStory instructs prospective partners that "[t]he first step toward recording all in-browser interactions and making them available for pixel-perfect playback is deploying FullStory's recording JavaScript snippet.  Simply paste the snippet into the <head> element via your Content Management System (CMS), via your online store platform, or via your application's code."

23.     This snippet of code allows Defendants to record the keystrokes, mouse clicks, data entry, and other electronic communications of visitors to websites where the code is installed.  It also allows Defendants to track the amount of time spent on the website, geographic location of the visitor, and other information described above.

24.     FullStory records website user's interactions locally in the user's browser and transmits that information to FullStory's recording servers.  FullStory then makes the information available to its clients.

25.     FullStory not only records users' electronic communications, but also can monitor them *live*.  "For sessions that are actively recording and we are still receiving events from a user (meaning the last page in their session is still open), you'll see a 'Go Live' button at the end of the

playback bar.  Once you click on the button, you'll essentially be riding along in near real time with the user with no need to refresh the playback."

26.     FullStory's recording is not limited to desktop website, but also mobile websites and mobile applications.[4]

27.     Technology like FullStory's Session Replay feature is not only highly intrusive, but dangerous.  A 2017 study by Princeton University found that session recording technologies were collecting sensitive user information such as passwords and credit card numbers.  The research notes that this wasn't simply the result of a bug, but rather insecure practices.  Thus, session recording technologies such as FullStory's can leave users vulnerable to data leaks and the harm resulting therefrom.

28.     FullStory's business model involves entering into voluntary partnerships with various companies and providing their software to their partners.

29.     One of FullStory's partners is Defendant Blue Nile.

30.     Blue Nile utilized FullStory's software on the Website, at least up until November 2020.

31.     Blue Nile knew that FullStory's software captures the keystrokes, mouse clicks and other communications of visitors to its website, and pays FullStory to supply that information.

32.     Pursuant to an agreement with FullStory, Blue Nile enabled FullStory's software by voluntarily embedding FullStory's software code on the Website.

33.     As previously deployed, FullStory's software, as employed by Blue Nile, functions as a wiretap.

**II.     Defendants Wiretapped Plaintiff's Electronic Communications**

34.     Between January 2020 and May 2020, Ms. Johnson visited the Website on a monthly basis and perused the Website's selection of jewelry.  Ms. Johnson did not purchase anything.

---

[4] https://www.fullstory.com/mobile-apps/.

35.     During that visit, and upon information and belief, the Session Replay feature in FullStory's software created a video capturing each of Plaintiff's keystrokes and mouse clicks on the website.  The FullStory wiretap also captured the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device.

36.     FullStory's recording of keystrokes, mouse clicks, data entry, and other electronic communications began the moment a user accesses or interacts with the Website.

37.     When users access the Website and make a purchase, they enter their PII. FullStory's software captures these electronic communications throughout each step of the process.

38.     FullStory's software captures, among other things:

        (a)  The user's mouse clicks;

        (b)  The user's keystrokes;

        (c)  The user's payment card information, including card number, expiration date, and CVV code;

        (d)  The user's IP address;

        (e)  The user's their location at the time of the visit; and

        (f)  The user's browser type and the operating system on their devices

39.     Crucially, Defendant Blue Nile did not ask users, including Plaintiff, whether they consent to being wiretapped by FullStory.  Users were never actively told that their electronic communications are being wiretapped by FullStory.  Nor was any such wiretapping disclosed in Blue Nile's Privacy Policy.

40.     Neither Plaintiff nor any Class member consented to being wiretapped on the Website, nor to have their communications recorded and shared with FullStory.  Any purported consent that was obtained was ineffective because (i) the wiretapping began from the moment Plaintiff and Class members accessed the Website; (ii) the Privacy Policy did not disclose the wiretapping or FullStory; and (iii) the hyperlink to the Privacy Policy is inconspicuous and therefore insufficient to provide notice.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff seeks to represent a class of all California residents who visited the Website, and whose electronic communications were intercepted or recorded by FullStory.  Plaintiff reserves the right to modify the class definition as appropriate based on further investigation and discovery obtained in the case.

42.     Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

43.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 635 and invaded Plaintiff's privacy rights in violation of the California Constitution; and whether class members are entitled to actual and/or statutory damages for the aforementioned violations.

44.     The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, visited the Website and had her electronic communications intercepted and disclosed to FullStory through the use of FullStory's wiretaps.

45.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

46.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and

expense to all parties and multiplies the burden on the judicial system presented by the complex

legal and factual issues of this case.  Individualized litigation also presents a potential for

inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer

management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment

of the liability issues will ensure that all claims and claimants are before this Court for consistent

adjudication of the liability issues.

47.     Plaintiff brings all claims in this action individually and on behalf of members of the

Class against Defendants.

**<u>COUNT I</u>**
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 631**

48.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set

forth herein.

49.     Plaintiff brings this claim individually and on behalf of the members of the proposed

Class against Defendants.

50.     To establish liability under section 631(a), Plaintiff need only establish that

Defendants, "by means of any machine, instrument, contrivance, or in any other manner," did any

of the following:

> Intentionally taps, or makes any unauthorized connection, whether
> physically, electrically, acoustically, inductively or otherwise, with
> any telegraph or telephone wire, line, cable, or instrument, including
> the wire, line, cable, or instrument of any internal telephonic
> communication system,

> *Or*

> Willfully and without the consent of all parties to the communication,
> or in any unauthorized manner, reads or attempts to read or learn the
> contents or meaning of any message, report, or communication while
> the same is in transit or passing over any wire, line or cable or is
> being sent from or received at any place within this state,

> *Or*

> Uses, or attempts to use, in any manner, or for any purpose, or to
> communicate in any way, any information so obtained,

*Or*

> Aids, agrees with, employs, or conspires with any person or persons
> to unlawfully do, or permit, or cause to be done any of the acts or
> things mentioned above in this section.

51.    Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email.  *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

52.    FullStory's software, including its Session Replay feature, is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

53.    At all relevant times, by using FullStory's technology, Defendants intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiff and Class Members on the one hand, and Blue Nile's Website on the other hand.

54.    At all relevant times, by using FullStory's technology, Defendants willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative Class Members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

55.    Defendants aided, agreed with, and conspired with each other to implement FullStory's technology and to accomplish the wrongful conduct at issue here.  In addition, Blue Nile employed FullStory to accomplish the wrongful conduct at issue here.

56.    Plaintiff and Class Members did not consent to any of Defendants' actions in implementing FullStory's wiretaps on the Website.  Nor have Plaintiff nor Class Members

consented to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiff and Class Members' electronic communications.

57.     The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

58.     Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2, including statutory damages of $5,000 per violation.

**COUNT II**
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 635**

59.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

60.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

61.     California Penal Code § 635 provides, in pertinent part:

> Every person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another, or any device which is primarily or exclusively designed or intended for the unauthorized interception or reception of communications between cellular radio telephones or between a cellular radio telephone and a landline telephone in violation of Section 632.5, or communications between cordless telephones or between a cordless telephone and a landline telephone in violation of Section 632.6 , shall be punished by a fine not exceeding two thousand five hundred dollars.

62.     At all relevant times, by implementing FullStory's wiretaps, each Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another.

63.     FullStory's code is a "device" that is "primarily or exclusively designed" for eavesdropping.  That is, the FullStory's code is designed to gather PII, including keystrokes, mouse clicks, and other electronic communications.

64.     Plaintiff and Class Members did not consent to any of Defendants' actions in implementing FullStory's wiretaps.

65.     Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2, including statutory damages of $5,000 per violation.

<div align="center">

**COUNT III**
**Invasion Of Privacy Under California's Constitution**

</div>

66.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

67.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

68.     Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various Internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

69.     At all relevant times, by implementing FullStory's wiretaps on Blue Nile's Website, each Defendant intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution, and procured the other Defendant to do so.

70.     Plaintiff and Class Members had a reasonable expectation that their PII and other data would remain confidential and that Defendants would not install wiretaps on the Website.

71.     Plaintiff and Class Members did not consent to any of Defendants' actions in implementing FullStory's wiretaps on the Website.

72.     This invasion of privacy is serious in nature, scope and impact.

73.     This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

74.     Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

1

## **PRAYER FOR RELIEF**

2          WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

3   judgment against Defendants, as follows:

4          (a)    For an order certifying the Class under Rule 23 and naming Plaintiff as the

5                 representative of the Class and Plaintiff's attorneys as Class Counsel to

6                 represent the Class;

7          (b)    For an order declaring that the Defendants' conduct violates the statutes

8                 referenced herein;

9          (c)    For an order finding in favor of Plaintiff and the Class on all counts

10                asserted herein;

11         (d)    For compensatory, punitive, and statutory damages in amounts to be

12                determined by the Court and/or jury;

13         (e)    For prejudgment interest on all amounts awarded;

14         (f)    For an order of restitution and all other forms of equitable monetary relief;

15                and

16         (g)    For an order awarding Plaintiff and the Class their reasonable attorneys'

17                fees and expenses and costs of suit.

18

## **DEMAND FOR TRIAL BY JURY**

19         Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all

20   issues so triable.

21

Dated:  November 19, 2020                Respectfully submitted,

22

23                                       **BURSOR & FISHER, P.A.**

24                                       By:    _/s/ Joel D. Smith_____
                                                   Joel D. Smith

25

26                                       L. Timothy Fisher (State Bar No. 191626)
                                         Joel D. Smith (State Bar No. 244902)

27                                       1990 North California Boulevard, Suite 940
                                         Walnut Creek, CA  94596

28                                       Telephone: (925) 300-4455

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    13

Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
jsmith@bursor.com

*Attorneys for Plaintiff*