EMILY JOHNSON HENN (SBN 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com

SIMON J. FRANKEL (SBN 171552)
PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: pcarey@cov.com

*Attorneys for Defendants*
*Blue Nile, Inc. and FullStory, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN JOHNSON, individually and on behalf of all others similarly situated, | Civil Case No.: 3:20-cv-08183-LB |
| Plaintiff, | |
| v. | **DEFENDANTS BLUE NILE, INC. AND FULLSTORY, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), AND 12(b)(6)** |
| BLUE NILE, INC., and FULLSTORY, INC., | |
| Defendants. | Hearing Date:  April 8, 2021 |
| | Hearing Time: 9:30 a.m. |
| | Honorable Laurel Beeler |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ........................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.  ALLEGATIONS OF THE COMPLAINT ................................................................ 3

    A.  Blue Nile's Use of FullStory's Software and Services ........................................... 3

    B.  Allegations Related to Plaintiff ............................................................. 4

III.  LEGAL STANDARD ..................................................................................... 5

IV.  ARGUMENT ............................................................................................. 6

    A.  Defendants Should Be Dismissed for Lack of Personal Jurisdiction. ................... 6

        1.  Plaintiff Does Not and Cannot Establish General Jurisdiction Over
            Defendants. ................................................................................... 6

        2.  Plaintiff Does Not and Cannot Establish Specific Jurisdiction Over
            Defendants. ................................................................................... 7

            a)  The Complaint Contains No Allegations of Purposeful
                Direction by Defendants. ..................................................... 8

            b)  There Are No Allegations that Plaintiff's Claims Arise Out of
                or Relate to Forum-Related Activities by Defendants. .................. 9

            c)  The Exercise of Jurisdiction Over Defendants in California Is
                Not Reasonable. ............................................................... 10

    B.  Every Claim in the Complaint Fails as a Matter of Law. ................................. 11

        1.  The Court Should Dismiss Count 1 Because the Complaint Fails To State
            a Claim Under Section 631. ........................................................... 11

            a)  FullStory and Blue Nile Did Not Violate Section 631 Because
                the Software Did Not Collect the "Contents" of Plaintiff's
                Purported Communications. ................................................. 11

            b)  FullStory and Blue Nile Did Not Violate Section 631 Because
                Blue Nile, Using FullStory's Technology, Was a Party to
                Plaintiff's Purported Communications. ..................................... 13

c)   FullStory and Blue Nile Did Not Violate Section 631 Because the Software Did Not Intercept Communications "In Transit." ... 17

d)   The Conduct Alleged Did Not Violate Section 631 Because It Was Disclosed in Blue Nile's Privacy Policy, Relied on by the Complaint.................................................................................. 18

2.   The Court Should Dismiss Count 2 Because Plaintiff Lacks Standing To Assert Such a Claim and Because the Complaint Fails To State a Claim Under Section 635........................................................................ 19

a)   Plaintiff Lacks a Private Right of Action and Standing To Assert a Claim Under Section 635................................................. 20

b)   FullStory's Code Is Not a Device Primarily or Exclusively Designed for Eavesdropping......................................................... 21

c)   Even if FullStory's Code Was a Covered Device, Blue Nile's Conduct Is Not Prohibited by Section 635. .................................. 22

3.   The Court Should Dismiss Count 3 Because Plaintiff Cannot State a Claim for Invasion of Privacy Under the California Constitution...................... 23

V.   CONCLUSION.................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) ...................................................................................................10

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*,
  480 U.S. 102 (1987) ..................................................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................5

*BNSF Ry. Co. v. Tyrrell*,
  137 S. Ct. 1549 (2017) ..............................................................................................................7

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ..................................................................................................9

*Brainerd v. Governors of the Univ. of Alta.*,
  873 F.2d 1257 (9th Cir. 1989) ..................................................................................................5

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
  137 S. Ct. 1773 (2017) ...........................................................................................................6, 9

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................................................................................11

*Bunnell v. Motion Picture Ass'n of Am.*,
  567 F. Supp. 2d 1148 (C.D. Cal. 2007) ..............................................................................17, 18

*Catsouras v. Dep't of Cal. Highway Patrol*,
  181 Cal. App. 4th 856 (2010) .................................................................................................24

*Cline v. Reetz-Laiolo*,
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) ..................................................................................17

*Cohen v. Casper Sleep, Inc.*,
  2018 WL 3392877 (S.D.N.Y. July 12, 2018) .........................................................................20

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ..................................................................................................................6

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ................................................................................................................20

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018)..................................................................................23

*Erickson v. Neb. Mach. Co.*,
    No. 15-cv-01147-JD (N.D. Cal. July 6, 2015)..................................................10

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ......................................................13, 14, 15, 16

*In re Facebook Internet Tracking Litig.*,
    140 F. Supp. 3d 922 (N.D. Cal. 2015)............................................................21

*In re Facebook Internet Tracking Litig.*,
    263 F. Supp. 3d 836 (N.D. Cal. 2017)............................................................22

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
    905 F.3d 597 (9th Cir. 2018) ..........................................................................8

*Garcia v. Enter. Holdings, Inc.*,
    78 F. Supp. 3d 1125 (N.D. Cal. 2015)............................................................19

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .........................................................................5

*In re Google, Inc. Privacy Policy Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014)........................................................19, 24

*Gullen v. Facebook*,
    2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ....................................................10

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) ....................................................................................23, 24

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..........................................................24

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ........................................................................17

*In re Lenovo Adware Litig.*,
    2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)..................................................20

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................23, 24

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................5

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ........................................................................21

*Mavrix Photos, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ..........................................................................9

*Membrila v. Receivables Performance Mgm't, LLC*
    2010 WL 1407274 (S.D. Cal. Apr. 6, 2010)...........................................14, 16

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ............................................................................5

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ......................................................17, 18

*In re Palmdale Hills Prop., LLC*,
    654 F.3d 868 (9th Cir. 2011) ......................................................................5, 14

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ..........................................................................5

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ..........................................................................8

*Powell v. Union Pac. R. Co.*,
    864 F. Supp. 2d 949 (E.D. Cal. 2012)............................................................13

*Revitch v. New Moosejaw LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)............................................13, 14

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975) ..................................................................*passim*

*Rosenow v. Facebook, Inc.*,
    2020 WL 1984062 (S.D. Cal. Apr. 27, 2020)..................................................17

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ................................................................*passim*

*Scott v. Breeland*,
    792 F.2d 925 (9th Cir. 1986) ............................................................................6

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)................................................................................20, 21

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
    2018 WL 10689420 (N.D. Cal. July 9, 2018)....................................................8

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) ...................................................................................................24

*ThermoLife Int'l, LLC v. NetNutri.com LLC*,
    813 Fed. Appx. 316 (9th Cir. 2020) ................................................................................9

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) ...........................................................................5

*United States v. Reed*,
    575 F.3d 900 (9th Cir. 2009) ........................................................................................12

*Urbaniak v. Newton*,
    226 Cal. App. 3d 1128 (1991) ......................................................................................24

*In re Vizio, Inc. Consumer Privacy Litig.*
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) .........................................................................18

*Walden v. Fiore*,
    571 U.S. 277 (2014) ........................................................................................7, 8, 10, 11

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) .........................................................................................5

*Yunker v. Pandora Media, Inc.*,
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ...............................................................24

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ..................................................................................11, 12

**Statutes**

18 U.S.C. § 2512 ....................................................................................................................20

Cal. Pen. Code § 631(a) ...........................................................................................11, 17, 20

Cal. Pen. Code § 637.2(a) ......................................................................................................20

**Other Authorities**

*Device*, Merriam-Webster.com Dictionary, (last visited Nov. 13, 2020) .................................21

*Device*, Oxford English Dictionary, (last visited Nov. 13, 2020) ..........................................21

*Privacy Policy*, Blue Nile, (last updated January 1, 2020) .....................................................19

*Session Replay*, FullStory, (last updated Oct. 2019) ................................................................4

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3     PLEASE TAKE NOTICE that on April 8, 2021 at 9:30 a.m., or as soon thereafter as available, in

4     the courtroom of the Honorable Laurel Beeler, located at San Francisco Courthouse, Courtroom B, 15th

5     Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants FullStory, Inc. ("FullStory") and

6     Blue Nile, Inc. ("Blue Nile") (collectively, "Defendants"), will and hereby do move pursuant to Federal

7     Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) for an order dismissing with prejudice

8     Plaintiff's Complaint (Dkt. No. 1) ("Compl.") as asserted against FullStory and Blue Nile.  This Motion

9     is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings

10    and papers on file in this action, any other such matters of which the Court may take judicial notice, and

11    any other matter that the Court may properly consider.

12

## STATEMENT OF ISSUES TO BE DECIDED

13    1.     Whether this Court should dismiss this action for lack of personal jurisdiction over

14    Defendants in California, pursuant to Federal Rule of Civil Procedure 12(b)(2).

15    2.     Whether this Court should dismiss the claims in this action against FullStory, Inc. and

16    Blue Nile, Inc. for failure to state a claim upon which relief can be granted under Federal Rule of Civil

17    Procedure 12(b)(6).

18    3.     Whether this Court should dismiss the California Invasion of Privacy Act Section 635

19    claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

20

## MEMORANDUM OF POINTS AND AUTHORITIES

21 **I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

22    Defendant Blue Nile is a worldwide jewelry company that operates a retail website at

23    bluenile.com.  Blue Nile employs the services of co-defendant FullStory, a service provider for retail

24    and commercial website operators like Blue Nile.  Compl. ¶¶ 7, 10.  Companies like Blue Nile deploy

25    FullStory's software on their websites in order to understand and improve their websites' functionality.

26    *Id.* ¶ 15.  This, in turn, allows Blue Nile to improve the user experience for visitors to its site.  *Id.*  For

27    FullStory's software to work, Blue Nile must add FullStory's software code to Blue Nile's website.  *Id.*

28

¶ 22.  That software code collects certain usage information from visitors to Blue Nile's website, and the information is used to inform the analytics that FullStory provides to Blue Nile.  *Id.* ¶¶ 23–24.  Plaintiff does not allege this information is used for any other purpose.

Put simply, this case is about a retailer's ability to understand how its website is functioning and how users are interacting with the website to ensure a smooth, error-free experience for the website visitors.  Plaintiff seeks to criminalize this behavior.  But Plaintiff's arguments that this routine internet functionality amounts to unlawful wiretapping and eavesdropping are meritless.  The Court should dismiss the Complaint with prejudice for the reasons described below.

*First*, the Court lacks personal jurisdiction over  FullStory, a Georgia-based company incorporated in Delaware, and Blue Nile, a Washington-based company incorporated in Delaware.  The Complaint is devoid of allegations of forum-related conduct by Defendants, and the assertion of personal jurisdiction over Defendants here is contrary to the Supreme Court's recent holdings.  So this action should be dismissed entirely.

*Second*, Plaintiff has failed to state any claim under which she is entitled to relief.  The California Invasion of Privacy Act ("CIPA") claims fail for multiple reasons.

- Plaintiff has not alleged that any "contents" of her communications were intercepted, as required by Section 631, as she only alleges that Blue Nile and FullStory learned of her "mouse clicks" while she "browsed" Blue Nile's website.  Such mouse clicks cannot plausibly constitute the "contents" of a communication;

- Blue Nile and FullStory were the recipients of the communications and thus fit within CIPA's well-recognized party exception.  FullStory was not a third party to the communication, but instead an extension of Blue Nile, thus neither Blue Nile nor FullStory can be held liable for eavesdropping under the party exception;

- Plaintiff has failed to plausibly allege that her communications were intercepted "in transit," an essential element of a Section 631 claim;

- None of the data collection alleged in the complaint was surreptitious, as required by Section 631, given that everything complained of is fully disclosed in Blue Nile's privacy

policy (which is relied on in the Complaint).  As a result, neither Blue Nile nor FullStory can be liable under Section 631, and Blue Nile cannot be liable for allegedly aiding and abetting or conspiring with FullStory to violate the statute;

- Plaintiff cannot state a claim under Penal Code Section 635, for trafficking in or possessing a wiretap device, because Plaintiff has not adequately alleged an underlying violation of that section, which is required both to establish a private right of action and for standing to bring a Section 635 claim; and

- Plaintiff's Section 635 claim fails on the additional ground that FullStory's software-based service is not a "device" which is "primarily or exclusively designed or intended for eavesdropping," as required.

*Third*, Plaintiff has failed to state a claim for invasion of privacy under the California Constitution.  Plaintiff cannot plausibly allege that she held a reasonable expectation of privacy in the information allegedly collected because Defendants learned only of Plaintiff's mouse clicks, and nothing more.  Nor has Plaintiff plausibly alleged that the data collection at issue constitutes an "egregious breach of social norms."  As a matter of law, such routine collection of data for analytics purposes cannot rise to the requisite level for invasion of privacy.

For these reasons, the Court should dismiss the Complaint entirely.

## II.    ALLEGATIONS OF THE COMPLAINT

### A.    Blue Nile's Use of FullStory's Software and Services

FullStory is a Delaware corporation headquartered in Atlanta, Georgia.  Compl. ¶ 8.  It provides a software-based service to companies that is designed to "improve the[] website design and customer experience" of the websites.  Compl. ¶ 15.  FullStory's customers embed FullStory's code on their own websites, which in turn allows those website operators to see certain information about how visitors to their websites are interacting with and utilizing their sites.  *Id*. ¶ 32, 35.  Although incompletely and inaccurately described in the Complaint, as alleged, this code allows the FullStory software, in some instances, to recognize, collect, and display certain events such as "keystrokes" and "mouse clicks."  *Id*.

¶ 35.  It also allows FullStory to simulate a user's website interactions through the software's "Session Replay."[1]  *Id.* ¶ 18.

Blue Nile, a Delaware corporation headquartered in Seattle, Washington, is one such customer that relies on FullStory for website analytics services.  *Id*. ¶¶ 29–30.  As Plaintiff explains, Blue Nile "embedd[ed]" FullStory's code on its website "and pays FullStory to supply" the data that is needed to analyze how users interact with Blue Nile's website, as shown in a session replay.  *Id*. ¶¶ 31–32.  The Complaint correctly observes that FullStory is not a software company in the traditional sense of someone who sells copies of its software; rather, FullStory provides "Software-as-a-Service" or "SaaS." *Id.* ¶ 9, 14.  Thus, instead of requiring its customers to purchase the software, install it on their own computers, and collect and host the website-interaction data on their own computers or servers, FullStory provides all of this for its customers, allowing its customers to interact with the data in the cloud, once the website operator has put FullStory's code on its website.

### B.    Allegations Related to Plaintiff

Plaintiff Susan Johnson is a California resident who alleges that between January and May 2020 she browsed Blue Nile's website on a monthly basis but did not purchase anything.  Compl. ¶ 34.  As part of these visits, Plaintiff alleges that FullStory "recorded" Plaintiff's "keystrokes, mouse clicks, and other electronic communications" for Blue Nile.  *Id.* ¶ 4.  Notably, Plaintiff does not allege that she ever typed anything into any field on Blue Nile's website or what "keystrokes" FullStory and Blue Nile allegedly recorded.

Plaintiff also does not allege that FullStory did anything with her "communications" other than make them available to Blue Nile, the very entity whom with Plaintiff was purportedly "communicating."  Plaintiff also does not allege that FullStory or Blue Nile sold or otherwise disclosed her data to any third parties, or that she was affected in any way by the alleged conduct.

---

[1] Plaintiff misleadingly cites to FullStory's own website for her allegation that the Session Replay feature "relies on real video of a user's interactions with a website . . . ."  Compl. ¶ 17.  The website cited states exactly the opposite: that the "replay" is a "high-fidelity reproduction" of a user's interaction with the website, not an actual video.  *The Definitive Guide to Session Replay*, FullStory, https://www.fullstory.com/resources/the-definitive-guide-to-session-replay (last updated Oct. 2019).

### III.   LEGAL STANDARD

Plaintiffs bear the burden of supporting the exercise of personal jurisdiction over each defendant individually. *See Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1258 (9th Cir. 1989). "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)). "California's long-arm statute permits a court to exercise personal jurisdiction over a defendant to the extent permitted by the Due Process Clause of the Constitution." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Cal. Civ. Proc. Code § 410.10). "[T]he determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 108–09 (1987).

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "threadbare" recitation of the elements of a cause of action does not suffice. *Id.* Neither do conclusory allegations or allegations that "merely track[] the language of the statute[s] [themselves], without providing facts to substantiate the claimed legal conclusions." *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (courts should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

A challenge to a federal court's subject matter jurisdiction is properly raised under a motion to dismiss pursuant to Rule 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Article III standing is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011). Standing requires that the plaintiff suffered an "injury in fact" that is "concrete and particularized." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In seeking to

1   invoke a court's jurisdiction, plaintiffs bear the burden of proving that jurisdiction exists.  *Scott v.*

2   *Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

3   **IV.    ARGUMENT**

4       **A.    Defendants Should Be Dismissed for Lack of Personal Jurisdiction.**

5       In order for a court to exercise personal jurisdiction over a defendant it must have either

6   "general" or "specific" personal jurisdiction.  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,

7   137 S. Ct. 1773, 1780 (2017).  For corporate entities, "the place of incorporation and principal place of

8   business are paradigm" examples of general jurisdiction.  *Daimler AG v. Bauman*, 571 U.S. 117, 137

9   (2014).  Additionally, general jurisdiction can exist as to a corporation outside of the forum where it is

10  incorporated or headquartered if its contacts are "so continuous and systematic as to render it essentially

11  at home" in a different forum.  *Id.* at 139.  Separately, for a finding that specific personal jurisdiction

12  exists, "the suit must arise out of or relate to the defendant's contacts with the forum."  *Bristol-Myers*,

13  137 S. Ct. at 1780.  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction,

14  the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  *Schwarzenegger*, 374

15  F.3d at 800 (citation omitted).  Here, Plaintiff fails to allege facts sufficient for the Court to exercise

16  either general or specific jurisdiction over FullStory or Blue Nile.

17      **1.    Plaintiff Does Not and Cannot Establish General Jurisdiction Over
            Defendants.**

18

19      In recent years, the Supreme Court has repeatedly emphasized the limited circumstances under

20  which general jurisdiction applies.  For example, in *Daimler AG v. Bauman,* the Supreme Court held

21  that "only when the corporation's affiliations with the State in which suit is brought are so constant and

22  pervasive 'as to render [it] essentially at home in the forum State'" will general jurisdiction exist.  571

23  U.S. at 122 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

24  The *Daimler* Court clarified that the "paradigm" forums for general jurisdiction are the corporation's (i)

25  place of incorporation and (ii) principal place of business.  *Id.* at 137.  Three years after *Daimler*, the

26  Court again emphasized the narrow circumstances under which general jurisdiction can attach: "BNSF,

27  we repeat, is not incorporated [in Montana] and does not maintain its principal place of business [in

28

Montana].  Nor is BNSF so heavily engaged in activity in Montana 'as to render [it] essentially at home' in that State."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (citing *Daimler*, 571 U.S. at 137).

FullStory is neither incorporated in California nor does it have its principal place of business there.  *See* Compl. ¶ 8.  Likewise, Blue Nile is incorporated in Delaware and has its principal place of business in Washington.  *See id.* ¶ 5.  There are no allegations that FullStory or Blue Nile has "so heavily engaged in activity" in California so as to make either Defendant "essentially at home" in California. *See BNSF*, 137 S. Ct. at 1559.  The Complaint thus fails to demonstrate Defendants are subject to general jurisdiction in California.

> **2.      Plaintiff Does Not and Cannot Establish Specific Jurisdiction Over Defendants.**

The Ninth Circuit examines three factors to determine when a state has a sufficient interest in a lawsuit to justify the exercise of specific jurisdiction over a nonresident corporate defendant: (1) the defendant must have purposefully availed itself "of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) the cause of action must "arise[] out of or relate[] to the defendant's forum-related activities;" and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable."  *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden on the first two prongs, and failure to establish either one requires dismissal for lack of personal jurisdiction.  *Id*.

The Supreme Court has recently emphasized that to satisfy due process, the defendant's "challenged conduct" must "connect" it to the forum "in a meaningful way."  *Walden v. Fiore*, 571 U.S. 277, 290 (2014).  That is, "the defendant's *suit-related conduct* must create *a substantial connection* with the forum State."  *Id.* at 284 (emphases added).  Here, the Complaint offers only this conclusory statement:  "This Court has personal jurisdiction over Defendants because each of the Defendants have purposefully availed themselves of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of each of the Defendants' forum-related activities."  Compl. ¶ 12.  As explained below, this vague assertion, unsupported by any alleged *facts*, fails to satisfy either of the first two prongs under *Schwarzenegger*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### a) The Complaint Contains No Allegations of Purposeful Direction by Defendants.

In tort actions, as here, the first prong of the *Schwarzenegger* test "focus[es] on whether a defendant purposefully directs [its] activities at the forum and on whether the effects of those activities are felt within the forum." *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, 2018 WL 10689420, at *6 (N.D. Cal. July 9, 2018). Such purposeful direction can be shown in two ways. First, if "the commission of an intentional tort" took place in the forum, that will satisfy the purposeful direction test. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 604 (9th Cir. 2018) (finding personal jurisdiction existed in Nevada because that was the forum in which defendant made the defamatory statements). Second, if the defendant's conduct "takes place outside the forum," there may still be purposeful direction if that conduct has "effects inside the forum state." *Id.*

As the Complaint alleges, FullStory's business model involves "entering into voluntary partnerships with companies and providing their software to their partners." Compl. ¶ 28. In this case, FullStory allegedly contracted with Blue Nile, a Delaware corporation with its principal place of business in Washington. *See id.* ¶ 5. Plaintiff does not allege that Blue Nile and FullStory's licensing agreement was negotiated in California or entered into in California. She does not allege that FullStory developed its software in California, or that FullStory has any other suit-related contacts to this forum other than the fact that Plaintiff happened to be in California when she visited *Blue Nile's* website. Under recent Supreme Court precedent, this is not enough.

"A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct *by the defendant* that creates the necessary contacts with the forum." *Walden*, 571 U.S. at 286 (emphasis added). The *plaintiff's* suit-related contacts with the forum are not at issue. Here, California is not the focal point of any of FullStory's suit-related actions. All of FullStory's activities related to this case were achieved "without entering California, contacting any person in California, or otherwise reaching out to California." *See Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (effect of tortious conduct felt by California-based party does not confer personal jurisdiction over a defendant whose actions all occurred out-of-state). The most Plaintiff can claim is that FullStory entered into a licensing agreement to provide software and services to an out-of-forum company whose

website was available to California residents.  Such minimal suit-related contacts do not establish that FullStory purposefully directed its software at California.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008) (plaintiff could not use eBay's national presence to establish personal jurisdiction in the forum solely because the seller sold its goods on eBay).

As to Blue Nile, the Complaint makes only the conclusory allegation that Blue Nile "does business throughout California and the entire United States." *Id.* ¶ 6.  Plaintiff does not support this allegation with any facts, and then moves on to discuss Blue Nile's website.  Plaintiff seems to allege personal jurisdiction over Blue Nile based on the fact that it "runs a website through which it has sold numerous products nationwide." *See ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 Fed. Appx. 316, 318 (9th Cir. 2020).  But the Ninth Circuit has held that a plaintiff "cannot establish specific personal jurisdiction through nonspecific, nationwide sales," which is exactly what Plaintiff attempts to do here. *See id.*  Plaintiff fails to allege facts showing that Blue Nile specifically directs its commercial activity towards California.  And the fact that Blue Nile runs a website cannot save Plaintiff when the Ninth Circuit has explicitly held that maintenance of a website, without "something more," is insufficient to establish personal jurisdiction under the *Calder* test. *Mavrix Photos, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011).  There is no "something more" alleged here. *See id.*

### b)   There Are No Allegations that Plaintiff's Claims Arise Out of or Relate to Forum-Related Activities by Defendants.

Plaintiff also must demonstrate that her claims arise out of or relate to *Defendants'* contacts *with California*. *See Schwarzenegger*, 374 F.3d at 802.  There must be "an adequate link" between the defendant's contacts with the forum and the claims at issue. *Bristol-Myers*, 137 S. Ct. at 1781.  Contacts unrelated to Plaintiff's alleged claims will not suffice for specific jurisdiction. *Id.* ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim *unrelated* to those sales.") (emphasis added).

Again, the Complaint contains only threadbare allegations of forum-related contacts by Defendants, and these allegations do not establish specific contacts giving rise to any of Plaintiff's claims in this action.  "What is needed—and what is missing here—is a connection between the forum and the *specific claims at issue*." *Id.* (citing *Walden*, 571 U.S. at 288–89) (emphasis added).  Plaintiff's

alleged harm from accessing Blue Nile's website while in California does not establish forum-related contacts as to Defendants.  Just as in *Walden*, Plaintiff would have experienced the same alleged harm by visiting Blue Nile's website and interacting with FullStory's software regardless of the state she was in at the time she visited the website.  *See Walden*, 517 U.S. at 290; *see also Gullen v. Facebook*, 2016 WL 245910 at *3 (N.D. Ill. Jan. 21, 2016) (finding specific personal jurisdiction did not exist in forum because Facebook's use of facial recognition software would affect any Facebook user, not just those in the forum state).  And Plaintiff's threadbare allegation that Blue Nile does business throughout California offers no explanation as to how this relates specifically to the claims at issue, which arise from Plaintiff's "browsing" and "perusing" Blue Nile's website without ever making a purchase.  *See* Compl. ¶¶ 4, 34; *see also Erickson v. Neb. Mach. Co.*, No. 15-cv-01147-JD, slip op. at 7 (N.D. Cal. July 6, 2015) (Defendant's sales to California entities did not establish the suit-related contacts required for personal jurisdiction because the claim at issue did not relate to those contacts.).  Plaintiff cannot plausibly argue that by doing business throughout California Blue Nile directs its activities towards California residents who are not its customers.  Given the absence of any allegations demonstrating Defendants' forum-related conduct tied to this suit, the Court should dismiss Defendants for lack of personal jurisdiction.

> c)   **The Exercise of Jurisdiction Over Defendants in California Is Not Reasonable.**

The final prong of the *Schwarzenegger* test requires that "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable." *Schwarzenegger*, 374 F.3d at 802.  Here, FullStory, a Georgia-based company, contracted with Blue Nile, based in Washington.  It would be unreasonable to require Defendants to come to California to defend themselves when Defendants never took any suit-related actions to avail themselves of California and its laws.  Indeed, a finding of personal jurisdiction over Defendants here would effectively subject them to personal jurisdiction in every forum reached by Blue Nile's website—effectively every forum in the country.  To allow Defendants to be hauled into court in every forum in the country where residents merely visit Blue Nile's website would be unreasonable.  *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–02 (7th Cir. 2014) (finding no personal jurisdiction over a defendant

who ran a website and made a few online sales because that "would mean that a plaintiff could bring suit in literally any state where the defendant shipped at least one item. The creation of such de facto universal jurisdiction runs counter to the approach the Court has followed since *International Shoe*, and that it reaffirmed . . . in *Walden*.").

**B.**   **Every Claim in the Complaint Fails as a Matter of Law.**

Even if the Court finds personal jurisdiction over FullStory, the Court should still dismiss each claim in the Complaint, for each fails as a matter of law.

**1.**   **The Court Should Dismiss Count 1 Because the Complaint Fails To State a Claim Under Section 631.**

Section 631 of CIPA establishes liability, in relevant part, for:

> [a]ny person . . . [1] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state, or [2] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [3] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . ."

Cal. Pen. Code § 631(a).  Put succinctly, the section proscribes third party access to ongoing communications or the aiding of third-party access to ongoing communication.  For several reasons, Plaintiff's allegations fail the requirements of Section 631.

**a)**   **FullStory and Blue Nile Did Not Violate Section 631 Because the Software Did Not Collect the "Contents" of Plaintiff's Purported Communications.**

Plaintiff's Section 631 claim fails because Section 631 prohibits only the "unauthorized access of the 'contents' of any communication" and no contents of communications are alleged here.  *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (emphasis added) (quoting Cal. Pen. Code § 631(a)).  The analysis of whether something is the "contents" of a communication under CIPA is the same as it is under the federal Wiretap Act.  *Id*. (citation omitted).  Thus, "contents" means "the *intended* message conveyed by the communication . . . ."  *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th

Cir. 2014) (emphasis added).  It does not include "information regarding the characteristics of the message that is generated in the course of the communication" such as "the name, address, and subscriber number or identity of a subscriber or customer." *Id*. (quotation marks omitted); *see also United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009) (holding "origination, length, and time" of telephone call was not "contents").

Here, Plaintiff fails to allege that Defendants captured the "contents" of any of her purported communications.  Despite generic references to Defendants capturing her "mouse clicks" and "keystrokes" (Compl. ¶¶ 4, 35), she only alleges that she "browsed" and "perused" Blue Nile's website. *See id.* ¶¶ 4, 34.  Without alleging she ever typed anything, Plaintiff has not identified what "keystrokes" Defendants' could have captured.  The fact that she only alleges that she "browsed" and "perused" Blue Nile's website does not support a reasonable inference that Defendants collected anything amounting to the "contents" of a communication.  *See id.* ¶¶ 4, 34.

Plaintiff's further allegations that Defendants "captured the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" do not save her claim.  *See id.* ¶ 35.  Numerous courts have held that such exact information is not "the intended message conveyed by the communication."  *In re Zynga*, 750 F.3d at 1106.  Indeed, the Ninth Circuit in *Zynga* squarely rejected such an argument in holding that "contents" does not include "information regarding the characteristics of the message that is generated in the course of the communication" such as "the name, address, and subscriber number or identity of a subscriber or customer."  *Id*. (quotation marks omitted).  Plaintiff's allegations amount to nothing more than this same type of record information.

Accordingly, the Court should dismiss Count 1 as Plaintiff attempts to base her claim on the purported collection of information that was not the "contents" of her communications.  To the extent Plaintiff's theory of liability as to Blue Nile extends to the aiding of FullStory to violate Section 631, that liability cannot exist where FullStory did not itself violate Section 631.  Plaintiff's Section 631 claim should be dismissed in its entirety.

1

2

**b)      FullStory and Blue Nile Did Not Violate Section 631 Because Blue Nile, Using FullStory's Technology, Was a Party to Plaintiff's Purported Communications.**

3

Not only does Section 631 not apply based on there being no contents of the communication at

4

issue, but plaintiff cannot fix her complaint through amendment because she has not alleged another

5

element of a 631 claim: the existence of *third parties* intruding upon a conversation.  It cannot be "a

6

secret to one party to a conversation that the other party is listening to the conversation; only a third

7

party can listen secretly to a private conversation."  *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975)

8

("'Eavesdropping' is the problem the Legislature meant to deal with; 'eavesdrop' is defined in Webster's

9

7th New Collegiate Dictionary (1972) as 'to listen secretly to what is said in private.'").  Thus, the

10

statute does not create liability for someone "who is a 'party' to the communication."  *In re Facebook,*

11

*Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("*Facebook III*") (citing *Warden v.*

12

*Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping

13

by a third party and not to recording by a participant to a conversation.").

14

It is indisputable that, if Plaintiff communicated with Blue Nile, Blue Nile was a party to the

15

communication.  Plaintiff alleges that she "browsed" or "perused" Blue Nile's website on multiple

16

occasions.  Compl. ¶ 4, 34.  To the extent that this browsing involved a communication, the party with

17

whom plaintiff was communicating was Blue Nile.  Accordingly, Plaintiff cannot sustain a direct claim

18

against Blue Nile under Section 631.

19

Nor has Plaintiff stated a claim as to Blue Nile based on the aiding and abetting provisions of

20

Section 631, because a party cannot be held liable for aiding and abetting the wiretapping *of its own*

21

communication under Section 631.  *See Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 954 (E.D.

22

Cal. 2012).  Noting that "[p]ublished cases are in accord that section 631 applies only to third parties and

23

not participants," the court in *Powell* held that the participant in a call could not be held liable for aiding

24

and abetting wiretapping under Section 631.  *Id.* at 955.  This holding makes logical sense; if a

25

participant does not violate Section 631 by wiretapping his own communication, he also does not violate

26

Section 631 by aiding another party in wiretapping his own communication.  Only one other case has

27

considered aiding and abetting liability under Section 631, *Revitch v. New Moosejaw LLC*, 2019 WL

28

5485330 (N.D. Cal. Oct. 23, 2019), but the court there provided little reasoning in holding that a party could be liable under an aiding and abetting theory, and made no attempt to reconcile this holding with Section 631's party exception.  This Court should not follow *Revitch* and should instead affirm the well-established principle that Section 631 applies to third parties only.

Plaintiff's argument still fails even if a party to a communication could be held liable for aiding and abetting the wiretapping *of its own* communication under Section 631.  For the reasons explained below, just as Blue Nile was a party to the communication, so too was FullStory as Blue Nile's vendor, which was deployed by Blue Nile to collect information regarding user interaction with the website and provide that information to Blue Nile for Blue Nile's own benefit.  Thus, Blue Nile did not "aid, agree with, employ, or conspire with" FullStory to violate Section 631 because FullStory's actions did not violate the statute either.

While evaluating the party exception may be more straightforward in the context of telephonic communications—since CIPA was specifically drafted with those types of communications in mind—the same principles can be applied here, where Blue Nile used FullStory's SaaS.  In *Rogers* for example, the court held that the defendant, a "public information officer" for San Jose, could not be liable for tape recording and disclosing a conversation he had with a candidate for city council where that candidate called the defendant and the defendant never alerted the candidate to his recording of the call.  52 Cal. App. 3d at 898 (Section 631 does not prohibit "the recording of a conversation made by a participant rather than by a third party.").  Similarly, in *Membrila v. Receivables Performance Management, LLC*, the court held that the defendant debt collector could not be liable for recording and monitoring various telephone conversations it had with the plaintiff because it was a party to those conversations.  2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010).  In the context of the internet, where evaluating the party exception may be less straightforward, the Ninth Circuit instructs courts to examine the "technical context" presented by the communications at issue to determine who the parties to those communications are.  *See Facebook III*, 956 F.3d at 607–08.

Here, based on Plaintiff's own allegations, FullStory cannot be considered a third party to Plaintiff's alleged communications with Blue Nile.  Plaintiff alleges that Blue Nile voluntarily and

intentionally embedded FullStory's software code on Blue Nile's website, Compl. ¶ 32, and that Plaintiff's data was transmitted to FullStory's servers so that FullStory could "make[] the information available to [Blue Nile]."  *Id*. ¶ 24.  In other words, FullStory provides a service to Blue Nile for the sole purpose of providing analytics to Blue Nile.  Notably, Plaintiff nowhere alleges that FullStory used Plaintiff's data for any purpose other than to provide it to Blue Nile or was acting in any capacity other than as Blue Nile's service provider.  Plaintiff does not, for example, allege that FullStory sold her data, used it for advertising purposes, or disclosed it to any third party.  Indeed, Plaintiff alleges precisely the opposite.  She alleges that FullStory offers software-as-a-service; that is, Blue Nile is effectively renting space on FullStory's servers where Blue Nile can store data related to website interactions and view that data using FullStory's dashboard.  *See* Compl. ¶ 9.

These actions do not amount to surreptitious wiretapping by a *third party*.  FullStory's involvement in facilitating the collection of data regarding Plaintiff's interactions with Blue Nile's website is simply the modern-day SaaS equivalent of the city information officer in *Rogers* having the phone company install a "tape recorder jack" on his phone so that he could, for example, record conversations and "relay parts of [those] conversations . . . to local radio stations for broadcast." *Rogers*, 52 Cal. App. 3d at 897 (upholding dismissal of Section 631 claim where defendant was a party to the conversation he recorded).  This is no different than if the defendant in *Rogers* had used SaaS to record, store, listen to, and analyze his conversations with the plaintiff there.  Indeed, unlike the defendant in *Rogers*, who provided recorded conversations to radio stations for public broadcast, Plaintiff here does not allege that FullStory or Blue Nile divulged any of her information to third parties.

The Ninth Circuit's recent decision addressing the party exception demonstrates how FullStory's service is far afield from the actions of defendants that courts have found to be third parties to a communication.  In *Facebook III*, the Ninth Circuit held that Facebook could not avail itself of the party exception where Facebook allegedly used "plug-ins to track users' browsing histories when they visit[ed] third-party websites, and then compil[ed] these browsing histories into personal profiles which [were] sold to advertisers to generate revenue."  956 F.3d. at 596.  Facebook's plug-ins performed these actions even if the visitor to those third-party websites was not separately signed into Facebook, and

there were no allegations that the third-party website owners had access to or used the data collected by Facebook through those plug-ins for their own purposes. *Id.*

Looking at the alleged "technical context," as *Facebook III* requires, Plaintiff does not allege that FullStory did anything with the data allegedly collected from her interactions with Blue Nile's website other than make it available to Blue Nile to review, nor does she allege that FullStory otherwise operated like a third party in any respect. The sole function of FullStory's code is to sit in Blue Nile's own code on the website and allow Blue Nile to see how users interact with its own website. In other words, Blue Nile uses FullStory's software the same way the defendants in *Rogers* and *Membrila* used recorders— behavior the courts there made clear was not prohibited under the statute. *Rogers*, 52 Cal. App. 3d at 899; *Membrila*, 2010 WL 1407274, at *2.

Indeed, to hold that FullStory violates Section 631 in these circumstances would criminalize the ubiquitous use of cloud software that is required to ensure that websites, and indeed the internet in general, function. Take this Court's website, for instance, https://www.cand.uscourts.gov/. The Northern District of California's website utilizes a search function "Enhanced by Google" to allow visitors to search its website. That search box, using Google's search engine, immediately starts populating suggested searches the moment a user starts typing information. For example, if a user types in "B," Google automatically populates the search field with the suggested search "Laurel Beeler." Plaintiff's theory of liability would mean that both the Court and Google are violating Section 631, as a user of the search function would be sharing its inquiry with Google. And Plaintiff's theory would mean that *any* website that uses another party's software to power and enhance its functionality would be engaging in criminal eavesdropping—even where the software serves only to analyze information on the website and does not provide that information to anyone else for any other purposes (such as targeted advertising).

Because FullStory and Blue Nile were parties to Plaintiff's communications, they cannot be held liable under Section 631 and neither can Blue Nile be held liable for aiding or conspiring with FullStory to violate Section 631 as FullStory did not commit an underlying violation. Count 1 should be dismissed.

1

2

       **c)**      **FullStory and Blue Nile Did Not Violate Section 631 Because the Software Did Not Intercept Communications "In Transit."**

3

      Plaintiff's Section 631 claim fails for the additional reason that she has not alleged interception

4

of communications while "in transit."  Section 631 makes it unlawful to "read[], or attempt[] to read, or

5

to learn the contents or meaning of any message, report, or communication" only "while the same is *in*

6

*transit*."  Cal. Pen. Code § 631(a).  Thus, liability under the statute exists only when a defendant

7

"intercepted" or "acquired [the communication] during transmission."  *Konop v. Hawaiian Airlines,*

8

*Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *see Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D.

9

Cal. 2018) (CIPA's "in transit" element is analogous to the federal Wiretap Act's "intercepted" element

10

and requires the same analysis).  Reading or acquiring the contents of a communication either *before* or

11

*after* that communication is transmitted does not qualify.  *See Rosenow v. Facebook, Inc.*, 2020 WL

12

1984062 at *7 (S.D. Cal. Apr. 27, 2020) (no allegations plaintiff's communications were "in transit").

13

The communication must be "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival."

14

*Konop*, 302 F.3d at 878 (citation omitted).

15

      Following the Ninth Circuit's "narrow definition of intercept," courts have dismissed claims

16

where a defendant "configured the [plaintiff's] email server software so that all Plaintiffs' messages

17

were copied and forwarded to [defendant's] Google email account."  *Bunnell v. Motion Picture Ass'n of*

18

*Am.*, 567 F. Supp. 2d 1148, 1153–54 (C.D. Cal. 2007).  In *Bunnell*, the defendant's actions did not fit

19

within the definition of intercept because copies of the communications were forwarded while the

20

communications were *stored* locally on a server—not while in transit.  Likewise, in *Opperman v. Path,*

21

*Inc.*, the court dismissed a CIPA wiretap claim where the plaintiffs alleged that an app on their

22

smartphones caused their contacts to be transmitted to the app developer's servers.  87 F. Supp. 3d 1018,

23

1063 (N.D. Cal. 2014).  Because the data at issue was stored locally on the plaintiffs' devices, the

24

defendant "did not intercept a communication" to collect the data.  *Id.*

25

      Here, as in *Bunnell* and *Opperman*, Plaintiff does not allege that FullStory "intercepted" her

26

communications.  Those communications, by Plaintiff's own allegations, were not seized while in

27

transit.  To the contrary, Plaintiff alleges that her "interactions" with Blue Nile were stored "locally in

28

[her] browser" and that FullStory *then* "transmit[ted] that information" from Plaintiff's browser to

FullStory's servers.  Compl. ¶ 24.  Plaintiff's contradictory, and conclusory allegations, that her data was transmitted "in real time" do not cure this deficiency.  *See* Compl. ¶¶ 4; *In re Vizio, Inc. Consumer Privacy Litig.* 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing federal wiretap claim because plaintiffs' "vague allegations" of data collected "in real time" did not show communications were intercepted during transmission).  Because, as Plaintiff admits, the alleged data collection occurred while Plaintiff's communications were stored locally on her browser, Plaintiff has failed to allege that FullStory intercepted her communications while in transit, requiring dismissal of Plaintiff's Section 631 claim.  *See Bunnell*, 567 F. Supp. 2d at 1153–54; *Opperman*, 87 F. Supp. 3d at 1063.  And, to the extent Plaintiff's theory of liability as to Blue Nile extends to the aiding of FullStory to violate Section 631, that liability cannot exist without first establishing an underlying violation, which Plaintiff has failed to do since her communications were not intercepted while in transit.

### d)      The Conduct Alleged Did Not Violate Section 631 Because It Was Disclosed in Blue Nile's Privacy Policy, Relied on by the Complaint.

Plaintiff's Section 631 claim also fails because Blue Nile disclosed the alleged interception to Plaintiff.  The gravamen of a Section 631 claim is that a third party *surreptitiously* intruded upon a conversation.  "'Eavesdropping' is the problem the Legislature meant to deal with" in enacting Section 631.  *Rogers*, 52 Cal. App. 3d at 899.  To "'[e]avesdrop' is 'to listen secretly to what is said in private.'" *Id.* (quoting Webster's 7th New Collegiate Dictionary (1972)).  But there is nothing surreptitious or hidden about FullStory's service or data collection, as alleged.  The privacy policy for Blue Nile's website explicitly disclosed to users like Plaintiff that data regarding their interactions with the website could be collected by Blue Nile *and by Blue Nile's service providers*.  Indeed, it is the reality of modern websites that they rely on service providers for their operation, and that a user's interactions with a website will be collected and shared with the website operator and its service providers.

Here, Blue Nile's privacy policy discloses that Blue Nile engages in the exact conduct alleged in the Complaint.[2]  Nowhere does the Complaint allege facts to support any inference that the alleged data

---

[2] Courts in the Ninth Circuit routinely consider website privacy policies at the motion to dismiss stage where, as here, a plaintiff's claim depends on the language of the privacy policy and it is referenced in

collection was surreptitious.  Nor could Plaintiff allege such facts, because Blue Nile's policy explicitly states that Blue Nile and third parties may collect information from users of Blue Nile's website, and that such information may be shared with third parties like FullStory.  *See Privacy Policy*, Blue Nile, https://www.bluenile.com/policies/privacy (last updated January 1, 2020).  For example, the policy provides that "We May Share Your Data With . . . Site optimization service providers."  *Id.*  The policy specifically notes that users' information may be collected using "cookies and other tracking technology."  *See id.*  The policy also discloses that Blue Nile use personal data "to optimize performance of the site," "to understand [its] customer . . . behavior," and "to improve . . . [the] overall customer experience."  *Id.*

Plaintiff's conclusory allegations that FullStory "secretly observe[d] and record[ed] website visitors' keystrokes, mouse clicks, and other electronic communications," Compl. ¶ 1, simply cannot be reconciled with the Blue Nile's publicly available privacy policy, which states that "[w]hen you navigate to [Blue Nile's] site" Blue Nile "may collect . . . information gathered through cookies and other tracking technology."*Privacy Policy*, Blue Nile.  Given that Blue Nile transparently discloses that it, and its service providers like FullStory, engage in the behavior at issue, there is nothing surreptitious about their actions and it cannot amount to wiretapping under Section 631.

### 2. The Court Should Dismiss Count 2 Because Plaintiff Lacks Standing To Assert Such a Claim and Because the Complaint Fails To State a Claim Under Section 635.

Parroting the statute's language, Plaintiff asserts that Blue Nile and FullStory violated California Penal Code Section 635 because "each Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another." Compl. ¶ 62 (quoting Cal. Pen. Code § 635).  This is wrong as a matter of law for several independent reasons.

---

the complaint.  *See, e.g.*, *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015). Here, the Complaint acknowledges the presence of Blue Nile's privacy policy and contains allegations that Blue Nile's privacy policy "did not disclose the wiretapping or FullStory."  Compl. ¶ 40.

1

2

### a)   Plaintiff Lacks a Private Right of Action and Standing To Assert a Claim Under Section 635.

Plaintiff lacks both statutory and constitutional standing to bring a Section 635 claim.  She lacks a private right of action under Section 635 because, under CIPA, only those who have "been injured by a violation of this chapter may bring an action against the person who committed *the violation*."  Cal. Pen. Code § 637.2(a) (emphasis added).  But the mere manufacture, possession, or sale of an eavesdropping "device" by a defendant (as alleged here under Section 635) causes no injury to a person such as Plaintiff.  Indeed, in a case involving the analogous federal statute, 18 U.S.C. § 2512, the court held it would be "constitutionally problematic" to afford a private right of action against defendants who merely possessed a wiretapping device because "plaintiffs who suffered no injury in fact would still be able to sue."  *Cohen v. Casper Sleep, Inc.*, 2018 WL 3392877 at *5 (S.D.N.Y. July 12, 2018); *see In re Lenovo Adware Litig.*, 2016 WL 6277245 at *7 (N.D. Cal. Oct. 27, 2016) (Section 2512 does not establish private right of action).  Plaintiff does not allege that she was injured in any way by the supposed violation of Section 635.  *See* Compl. ¶¶ 59–65.  Failing to offer such an allegation, Plaintiff has no private right of action under Section 635.

For a parallel reason, Plaintiff lacks Article III standing to assert a claim under Section 635.  A plaintiff must have "suffered an injury in fact" to have standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  That is, she "must show that [s]he . . . suffered an invasion of a legally protected interest that is concrete and particularized" from the alleged violation.  *Id*. at 1548 (citation omitted).  Defendants actions must have "affect[ed] the plaintiff in a personal and individual way."  *Id*.  And a plaintiff that demonstrates standing for a violation of one section of a statute does not meet automatically the standing requirement for a violation of another section of that same statute.  *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733–34 (2008).  Here, as noted, Plaintiff makes no allegation of injury from the alleged violation of Section 635.[3]  Claiming only that Defendants manufactured, sold, or

---

[3] Plaintiff's allegations in support of her Section 631 claim explicitly contend that "[t]he violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing."  Compl. ¶ 57.  In notable contrast, Plaintiff's Section 635 claim contains no such allegation as to any purported Article III injury.

possessed a "device" does not establish any harm to Plaintiff different from any member of the public, so the requisite "injury in fact" required for standing under Article III is absent.  *See Spokeo*, 136 S.Ct. at 1547.

            **b)**     **FullStory's Code Is Not a Device Primarily or Exclusively Designed for Eavesdropping.**

Section 635 only applies to a "device" that is "primarily or exclusively" designed for eavesdropping.  As an initial matter, there is no reason to think that FullStory's code, which Blue Nile is alleged to have embedded on its website, qualifies as a "device" under the statute.  Plaintiff refers to it as a "snippet of code."  Compl. ¶ 23.  But courts in this Circuit have rejected the argument that a "cookie" was a device where plaintiff had defined cookie "as a small text file containing a limited amount of information which sits idly on a user's computer until contacted by a server."  *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) ("*Facebook I*").  There, in addressing a different section of CIPA, the plaintiff alleged that a cookie was a "device" and thus qualified as a "machine, instrument, or contrivance" used to intercept communications.  *Id.*  The court rejected plaintiffs' threadbare definition, holding that the plaintiffs must actually "include facts in their pleading to show why" the cookie was a "device" that could qualify as a "machine, instrument, or contrivance."  *Id.*[4]  The Complaint here includes no such facts.

Even if FullStory's code can be considered a "device," the Complaint's factual allegations do not support a plausible inference that the code is "primarily or exclusively designed or intended for eavesdropping," as required by Section 635.  And, the fact Plaintiff has not established that the alleged

---

[4] Dictionary definitions support a narrow interpretation of "device" here.  For example, Merriam-Webster defines "device" as "something devised or contrived: such as . . . a piece of equipment or a mechanism designed to serve a special purpose or perform a special function (smartphones and other electronic devices, a hidden recording device)."  *Device*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/device (last visited Nov. 13, 2020).  And the Oxford English Dictionary defines "device" as "an invention, contrivance; esp. a mechanical contrivance (usually of a simple character) for some particular purpose."  *Device*, Oxford English Dictionary, https://www.oed.com/view/Entry/51464 (last visited Nov. 13, 2020).  In addition, given that CIPA is a penal statute, any ambiguity in the meaning of the word "device" should be interpreted narrowly under the rule of lenity.  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (applying rule of lenity to civil application of penal statute).

data collection at issue here amounts to a violation of Section 631, for the multiple independent reasons set out above, also requires dismissal of Plaintiff's Section 635 claim.  FullStory's software code cannot be primarily or exclusively designed for eavesdropping if Plaintiff has failed to establish that eavesdropping occurred here.

In addition, rather than support the conclusory allegation that FullStory's code is "primarily or exclusively designed or intended for eavesdropping," the Complaint's factual allegations demonstrate the contrary:  that FullStory's software is designed and intended to help companies improve their websites.  Plaintiff alleges that FullStory's software provides "marketing analytics."  Compl. ¶ 14.  And the Complaint notes that the purpose of FullStory's software is to "help businesses improve their website design and customer experience"—not to eavesdrop.  *Id.* ¶ 15.  Indeed, FullStory's software code and the service based on that software is best understood as "part of [the] routine internet functionality" that makes digital commerce possible.  *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) ("*Facebook II*") ("[W]ebsites routinely embed content from third-party servers in the form of videos, images, and other media, as well as through their use of analytics tools, advertising networks, code libraries and other utilities.").  Digital retailers—and indeed websites of all kinds—use analytics software like FullStory's for a host of legitimate reasons that do not amount to eavesdropping.  Permitting Plaintiff's claims to proceed would subvert the network architecture on which the internet is built and could potentially render countless website operators liable as eavesdroppers.

c)      **Even if FullStory's Code Was a Covered Device, Blue Nile's Conduct Is Not Prohibited by Section 635.**

Even if FullStory's code can be considered a device under the statute, Blue Nile did not engage in any of the actions prohibited by the statute.  Section 635 imposes liability on anyone who "manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another" a device "primarily or exclusively designed or intended for eavesdropping."  Cal. Pen. Code § 635.  The only term in that list that could plausibly apply to Blue Nile is "possess."  Under the statutory interpretation doctrine of *ejusdem generis*, however, when a "more general term follows more specific terms in a list, the general term is usually understood to embrace only objects similar in

nature to those objects enumerated by the preceding specific words." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018). Thus, the general term "possess" in Section 635 should be read in context of the more specific terms around it to be limited to the actual manufacturing chain and distribution and sales channels. *See id.* If the legislature intended to extend liability to the end user of such a "device" it could have easily included more definitive terms like "purchased" or "used." It did not. Thus, "possesses" should be read to include only those entities or individuals involved in the manufacture, distribution, or sale of a prohibited device, which does not include Blue Nile here.

Because Plaintiff has failed to plausibly allege that FullStory's software code is either a "device" or is "primarily or exclusively designed for eavesdropping," and because Blue Nile could not have plausibly engaged in any act prohibited by the statute, the Court should dismiss Count 2.

### 3. The Court Should Dismiss Count 3 Because Plaintiff Cannot State a Claim for Invasion of Privacy Under the California Constitution.

Plaintiff's claim for violations of her constitutional right to privacy fails as a matter of law. An invasion of privacy claim under the California Constitution requires plaintiffs to show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion constitutes a "serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012). In determining whether a reasonable expectation of privacy exists, courts consider the "customs, practices, and physical settings" surrounding a particular defendant's activities. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994).

Here, Defendants' alleged actions demonstrate that Plaintiff cannot plausibly allege a reasonable expectation of privacy because Plaintiff did not provide any information to the Defendants. Count 3 of the Complaint asserts that Plaintiff "ha[s] a reasonable expectation that [her] PII and other data would remain confidential." Compl. ¶ 70. But Plaintiff does not allege that she provided any PII *or any information at all* to Defendants. Plaintiff's entire complaint rests on her allegations that Defendants learned of her "mouse clicks" while she "browsed" Blue Nile's website. *See* Compl. ¶ 4. A person viewing a webpage cannot plausibly allege a reasonable expectation of privacy in their mouse clicks and browsing data from that very same website. Because Plaintiff merely browsed a website and does not

allege she provided any information to Defendants, Plaintiff cannot plausibly allege a reasonable expectation of privacy.

Even if Plaintiff could plausibly allege a reasonable expectation of privacy in her mouse clicks, the facts she alleges do not permit a reasonable inference that the alleged breach of that privacy constitutes an "egregious breach of social norms."  Invasions of privacy must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right."  *Hill*, 7 Cal. 4th at 37.  Courts typically find this standard is satisfied only in egregious circumstances, such as dissemination by the police of gruesome photographs of a deceased car accident victim, disclosure of a patient's HIV status, or improper use of confidential mental health records.  *See, e.g.*, *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856 (2010); *Urbaniak v. Newton*, 226 Cal. App. 3d 1128 (1991); *Taus v. Loftus*, 40 Cal. 4th 683 (2007).

Here, Plaintiff alleges that FullStory captured her "mouse clicks and keystrokes" while she browsed Blue Nile's website.  Compl. ¶ 4.  Although she speculates that this amounted to the collection of certain "electronic communications," Plaintiff does not allege that she ever typed anything or otherwise provided any information for Defendants to collect.  *See id.*  Indeed, while Plaintiff alleges that Defendants *could* collect an individual's payment card information, she does not allege that she ever entered such information into the website during her "browsing" or that Defendants actually collected her payment card information.  *See id.* ¶ 38.  The collection of mouse clicks, and nothing more, cannot constitute "an egregious breach of the social norms."  *See Hill*, 7 Cal. 4th at 37.  Courts in this Circuit have found that "[e]ven *disclosure* of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms.'"  *Low*, 900 F. Supp. 2d at 1025 (emphasis added); *see In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (finding alleged commingling and disclosure of personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences is not highly offensive); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (disclosing for marketing purposes was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1050, 1063 (N.D. Cal. 2012) (Apple's *disclosure* of the plaintiffs' addresses, gender, age, and current

location to third-party apps did not "constitute an egregious breach of social norms."). If disclosure of such personal information is not an egregious breach of social norms, then the mere collection of "mouse clicks" certainly cannot meet this high bar. No authority supports the notion that a business egregiously breaches social norms when it analyzes how a customer interacts with its own website by looking at what a customer clicked on.

For all these reasons, Plaintiff's Count 3 fails as a matter of law and should be dismissed with prejudice.

## V.   CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint with prejudice.

DATED:  January 29, 2021                COVINGTON & BURLING LLP

By:  */s/ Emily Johnson Henn*

EMILY JOHNSON HENN (SBN 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com

SIMON J. FRANKEL (SBN 171552)
PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: pcarey@cov.com

*Attorneys for Defendants*
*Blue Nile, Inc. and FullStory, Inc.*