EMILY JOHNSON HENN (SBN 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com

SIMON J. FRANKEL (SBN 171552)
PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: pcarey@cov.com

*Attorneys for Defendants*
*Blue Nile, Inc. and FullStory, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN JOHNSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BLUE NILE, INC., and FULLSTORY, INC.,<br><br>    Defendants. | Civil Case No.: 3:20-cv-08183-LB<br><br>**DEFENDANTS BLUE NILE, INC. AND FULLSTORY, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), AND 12(b)(6)**<br><br>Hearing Date: April 8, 2021<br>Hearing Time: 9:30 a.m.<br><br>Honorable Laurel Beeler |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS .................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED .......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.    ALLEGATIONS OF THE COMPLAINT................................................................... 3

    A.     Blue Nile's Use of FullStory's Software and Services............................................ 3

    B.     Allegations Related to Plaintiff.............................................................................. 4

III.   LEGAL STANDARD............................................................................................. 5

IV.    ARGUMENT ...................................................................................................... 6

    A.     Defendants Should Be Dismissed for Lack of Personal Jurisdiction. .................... 6

        1.     The Complaint Contains No Allegations of Purposeful Direction by
            Defendants. .............................................................................................. 7

        2.     There Are No Allegations that Plaintiff's Claims Arise Out of or Relate to
            Forum-Related Activities by Defendants.................................................... 9

        3.     The Exercise of Jurisdiction Over Defendants in California Is Not
            Reasonable. ............................................................................................ 10

    B.     Every Claim in the First Amended Complaint Fails as a Matter of Law. ............ 11

        1.     The Court Should Dismiss Count 1 Because the First Amended Complaint
            Fails To State a Claim Under Section 631.............................................. 11

            a)     FullStory and Blue Nile Did Not Violate Section 631 Because
                the Software Did Not Collect the "Contents" of Plaintiff's
                Purported Communications. ........................................................ 12

            b)     FullStory and Blue Nile Did Not Violate Section 631 Because
                Blue Nile, Using FullStory's Technology, Was a Party to
                Plaintiff's Purported Communications. ........................................ 13

            c)     The Conduct Alleged Did Not Violate Section 631 Because It
                Was Disclosed in Blue Nile's Privacy Policy, Relied on by the
                First Amended Complaint............................................................ 17

2.    The Court Should Dismiss Count 2 Because Plaintiff Lacks Standing To Assert Such a Claim and Because the First Amended Complaint Fails To State a Claim Under Section 635. .............................................................. 19

    a)    Plaintiff Lacks a Private Right of Action and Standing To Assert a Claim Under Section 635.................................................. 19

    b)    FullStory's Code Is Not a Device Primarily or Exclusively Designed for Eavesdropping......................................................... 20

    c)    Even if FullStory's Code Was a Covered Device, Blue Nile's Conduct Is Not Prohibited by Section 635. .................................. 22

3.    The Court Should Dismiss Count 3 Because Plaintiff Cannot State a Claim for Invasion of Privacy Under the California Constitution....................... 23

V.    CONCLUSION.............................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ...................................................................................11

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*,
    480 U.S. 102 (1987) ................................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................5

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) .................................................................................8

*Brainerd v. Governors of the Univ. of Alta.*,
    873 F.2d 1257 (9th Cir. 1989) .................................................................................5

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
    137 S. Ct. 1773 (2017) .........................................................................................6, 9

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ...................................................................12

*Catsouras v. Dep't of Cal. Highway Patrol*,
    181 Cal. App. 4th 856 (2010) ................................................................................25

*Cohen v. Casper Sleep, Inc.*,
    2018 WL 3392877 (S.D.N.Y. July 12, 2018) .......................................................19

*Cole v. Sunnyvale*,
    2010 WL 532428 (N.D. Cal. Feb. 9, 2010) .............................................................2

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ...............................................................................10

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ................................................................................................6

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008) ..............................................................................................20

*DirecTV Inc. v. Hart*,
    366 F. Supp. 2d 315 (E.D.N.C. 2004) ...................................................................19

*DirecTV, Inc. v. Treworgy*,
    373 F.3d 1124 (11th Cir. 2004) .............................................................................19

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ...............................................................................23

*Erickson v. Neb. Mach. Co.*,
    No. 15-cv-01147-JD, slip op. (N.D. Cal. July 6, 2015) ...............................9

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ...........................................................13, 15, 16

*In re Facebook Internet Tracking Litig.*,
    140 F. Supp. 3d 922 (N.D. Cal. 2015) ..................................................18, 20

*In re Facebook Internet Tracking Litig.*,
    263 F. Supp. 3d 836 (N.D. Cal. 2017) ..................................................22, 24

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
    905 F.3d 597 (9th Cir. 2018) .......................................................................7

*Garcia v. Enter. Holdings, Inc.*,
    78 F. Supp. 3d 1125 (N.D. Cal. 2015) ......................................................18

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .....................................................................5

*In re Google, Inc. Priv. Pol'y Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ........................................................25

*Gullen v. Facebook*,
    2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ................................................9

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) ........................................................................23, 24, 25

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................................................25

*In re Lenovo Adware Litig.*,
    2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ...........................................19

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..............................................23, 25

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .....................................................................................6

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ...................................................................21

*Mavrix Photos, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) .....................................................................9

*Membrila v. Receivables Performance Management, LLC*,
  2010 WL 1407274 (S.D. Cal. Apr. 6, 2010).................................................................15, 16

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ...........................................................................................5

*In re Palmdale Hills Prop., LLC*,
  654 F.3d 868 (9th Cir. 2011) .......................................................................................5, 15

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ........................................................................................5

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ........................................................................................8

*Powell v. Union Pac. R.R. Co.*,
  864 F. Supp. 2d 949 (E.D. Cal. 2012) ..........................................................................14

*Revitch v. New Moosejaw LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)................................................................14

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975) ................................................................................... *passim*

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................................................ *passim*

*Scott v. Breeland*,
  792 F.2d 925 (9th Cir. 1986) ..........................................................................................6

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)...................................................................................................20

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*,
  2018 WL 10689420 (N.D. Cal. July 9, 2018)..................................................................7

*Taus v. Loftus*,
  40 Cal. 4th 683 (2007) ...................................................................................................25

*ThermoLife Int'l, LLC v. NetNutri.com LLC*,
  813 F App'x 316 (9th Cir. 2020) .....................................................................................8

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) ..........................................................................5

*United States v. Reed*,
  575 F.3d 900 (9th Cir. 2009) ........................................................................................12

*Urbaniak v. Newton*,
  226 Cal. App. 3d 1128 (1991) .......................................................................................25

*Valentine v. Nebuad, Inc.*,
   2009 WL 8186130 (N.D. Cal. Oct. 6, 2009)....................................................................8

*Walden v. Fiore*,
   571 U.S. 277 (2014).................................................................................6, 7, 9, 11

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ..................................................................................5

*Yates v. United States*,
   574 U.S. 528 (2015)..............................................................................................22, 23

*Yunker v. Pandora Media, Inc.*,
   2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)...........................................................25

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ..............................................................................12, 13

**Statutes**

18 U.S.C. § 2512........................................................................................12, 19, 20

Cal. Penal Code § 631.................................................................................... *passim*

Cal. Penal Code § 637.2(a) ..........................................................................................19

**Other Authorities**

Fed. R. Civ. P. 12(b)(1).........................................................................................1, 2, 5

Fed. R. Civ. P.  12(b)(2)..................................................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 5

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 8, 2021, at 9:30 a.m., or as soon thereafter as available, in the courtroom of the Honorable Laurel Beeler, located at San Francisco Courthouse, Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants FullStory, Inc. ("FullStory") and Blue Nile, Inc. ("Blue Nile") (collectively, "Defendants"), will and hereby do move pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) for an order dismissing with prejudice Plaintiff's First Amended Complaint (Dkt. No. 34) ("FAC") as asserted against FullStory and Blue Nile. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, and any other matter that the Court may properly consider.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether this Court should dismiss this action for lack of personal jurisdiction over Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(2).

2.      Whether this Court should dismiss the claims in this action for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

3.      Whether this Court should dismiss the California Invasion of Privacy Act Section 635 claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Blue Nile is an online jewelry company that operates a retail website at Bluenile.com. FAC ¶¶ 1, 4, 7.  Blue Nile employs the services of co-defendant FullStory, a service provider for retail and commercial website operators like Blue Nile.  *Id.* ¶¶ 8–10.  Companies like Blue Nile deploy FullStory's software on their websites in order to understand and improve their websites' functionality.

Complaint (Dkt. No. 1) ("Compl.") ¶ 15.[1]  This, in turn, allows Blue Nile to improve the user experience for visitors to its site.  *Id.*  For FullStory's software to work, Blue Nile must add FullStory's software code to Blue Nile's website.  FAC ¶ 27.  That software code collects certain usage information from visitors to Blue Nile's website, and the information is used to inform the analytics that FullStory provides to Blue Nile.  *Id.* ¶ 28.  Plaintiff does not allege this information is used for any other purpose.

Put simply, this case is about a retailer's ability to understand how its website is functioning and how users are interacting with the website to ensure a smooth, error-free experience for the website visitors.  Plaintiff seeks to criminalize this behavior.  But Plaintiff's arguments that this routine internet functionality amounts to unlawful wiretapping and eavesdropping are meritless.  The Court should dismiss the FAC with prejudice for the reasons described below.

*First*, the Court lacks personal jurisdiction over FullStory, a Georgia-based company incorporated in Delaware, and Blue Nile, a Washington-based company incorporated in Delaware.  *Id.* ¶¶ 5, 8.  The FAC is devoid of allegations of forum-related conduct by Defendants, and the assertion of personal jurisdiction over Defendants here is contrary to the Supreme Court's recent holdings.  So this action should be dismissed entirely.

*Second*, Plaintiff has failed to state any claim under which she is entitled to relief.  The California Invasion of Privacy Act ("CIPA") claims fail for multiple reasons.

- Plaintiff has not alleged that any "contents" of her communications were intercepted, as required by Section 631, as she only alleges that Blue Nile and FullStory learned of her "mouse clicks" while she "browsed" Blue Nile's website.  FAC ¶¶ 1, 4.  Such mouse clicks cannot plausibly constitute the "contents" of a communication;

- Blue Nile and FullStory were the recipients of the communications and thus fit within CIPA's well-recognized party exception.  FullStory was not a third party to the

---

[1] In the FAC, Plaintiff deleted her allegation that FullStory's software "help[s] businesses improve their website design and customer experience."  *Id.*  But when assessing an amended complaint, "[t]he court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the . . . Amended Complaint plausibly suggests an entitlement to relief, as required under [*Ashcroft v.*] *Iqbal*."  *Cole v. Sunnyvale*, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) (citation omitted).

communication, but instead an extension of Blue Nile, thus neither Blue Nile nor FullStory can be held liable for eavesdropping under the party exception;

- None of the data collection alleged in the FAC was surreptitious, as required by Section 631, given that everything complained of is fully disclosed in Blue Nile's privacy policy (which is relied on in the FAC). As a result, neither Blue Nile nor FullStory can be liable under Section 631, and Blue Nile cannot be liable for allegedly aiding and abetting or conspiring with FullStory to violate the statute;

- Plaintiff cannot state a claim under Penal Code Section 635, for trafficking in or possessing a wiretap device, because Plaintiff has not adequately alleged an underlying violation of that section, which is required both to establish a private right of action and for standing to bring a Section 635 claim; and

- Plaintiff's Section 635 claim fails on the additional ground that FullStory's software-based service is not a "device" which is "primarily or exclusively designed or intended for eavesdropping," as required.

*Third*, Plaintiff has failed to state a claim for invasion of privacy under the California Constitution. Plaintiff cannot plausibly allege that she held a reasonable expectation of privacy in the information Defendants allegedly collected because Plaintiff herself intentionally sent this information to Defendants. Nor has Plaintiff plausibly alleged that the data collection at issue constitutes an "egregious breach of social norms." As a matter of law, such routine collection of data for analytics purposes cannot rise to the requisite level for invasion of privacy.

For these reasons, the Court should dismiss the FAC in its entirety.

## II.     ALLEGATIONS OF THE COMPLAINT

### A.     Blue Nile's Use of FullStory's Software and Services

FullStory is a Delaware corporation headquartered in Atlanta, Georgia. FAC ¶ 8. It provides a software-based service to companies that is intended to help retailers improve the website design and customer experience of their websites. Compl. ¶ 15. FullStory's customers embed FullStory's code on their own websites, which in turn allows those website operators to see certain information about how

visitors to their websites are interacting with and utilizing their sites.  FAC ¶¶ 26–28.  Although

incompletely and inaccurately described in the FAC, as alleged, this code allows the FullStory software,

in some instances, to recognize, collect, and display certain events such as "keystrokes" and "mouse

clicks."  *Id.* ¶ 41.  It also allows FullStory to simulate a user's website interactions through the

software's "Session Replay."[2]  *Id.* ¶¶ 19, 20.

Blue Nile, a Delaware corporation headquartered in Seattle, Washington, is one such customer

that relies on FullStory for website analytics services.  *Id.* ¶¶ 5, 39–40.  As Plaintiff explains, Blue Nile

"embedd[ed]" FullStory's code on its website "and pays FullStory to supply" the data that is needed to

analyze how users interact with Blue Nile's website, as shown in a session replay.  *Id.* ¶¶ 41–42.  The

FAC correctly observes that FullStory is not a software company in the traditional sense of someone

who sells copies of its software; rather, FullStory provides "software-as-a-service" or "SaaS."  *Id.* ¶ 9.

Thus, instead of requiring its customers to purchase the software, install it on their own computers, and

collect and host the website-interaction data on their own computers or servers, FullStory performs these

services on its customers' behalf, allowing its customers to interact with the data in the cloud, once the

website operator has put FullStory's code on its website.

### B.     Allegations Related to Plaintiff

Plaintiff Susan Johnson is a California resident who alleges that between January and May 2020

she browsed Blue Nile's website on a monthly basis but did not purchase anything.  FAC ¶ 44.  As part

of these visits, Plaintiff alleges that FullStory "recorded" Plaintiff's "keystrokes, mouse clicks, and other

electronic communications" for Blue Nile.  *Id.* ¶¶ 2, 4.  Notably, while Plaintiff now alleges in the FAC

that she "us[ed] the website search tool[,]" *id.* ¶ 44, she does not explain what that means or expressly

allege that she ever typed anything into any field on Blue Nile's website or what "keystrokes" FullStory

and Blue Nile allegedly recorded.

---

[2] Plaintiff misleadingly cites to FullStory's own website for her allegation that the Session Replay
feature "relies on real video of a user's interactions with a website . . . ."  FAC ¶ 22.  The website cited
states exactly the opposite: that the "replay" is a "high-fidelity reproduction" of a user's interaction with
the website, not an actual video.  *The Definitive Guide to Session Replay*, FullStory,
https://www.fullstory.com/resources/the-definitive-guide-to-session-replay (last updated Oct. 2019).

Plaintiff also does not allege that FullStory did anything with her "communications" other than make them available to Blue Nile, the very entity with whom Plaintiff was purportedly "communicating." Plaintiff also does not allege that FullStory or Blue Nile sold or otherwise disclosed her data to any third parties, or that she was affected in any way by the alleged conduct.

## III.   LEGAL STANDARD

Plaintiffs bear the burden of supporting the exercise of personal jurisdiction over each defendant individually. *See Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1258 (9th Cir. 1989). "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)). "California's long-arm statute permits a court to exercise personal jurisdiction over a defendant to the extent permitted by the Due Process Clause of the Constitution." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Cal. Civ. Proc. Code § 410.10). "[T]he determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 108–09 (1987).

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "threadbare" recitation of the elements of a cause of action does not suffice. *Id.* Neither do conclusory allegations or allegations that "merely track[] the language of the statute[s] [themselves], without providing facts to substantiate the claimed legal conclusions." *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (courts should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

A challenge to a federal court's subject matter jurisdiction is properly raised under a motion to dismiss pursuant to Rule 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Article III standing is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

F.3d 868, 873 (9th Cir. 2011).  Standing requires that the plaintiff suffered an "injury in fact" that is "concrete and particularized." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  In seeking to invoke a court's jurisdiction, plaintiffs bear the burden of proving that jurisdiction exists.  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

## IV.   ARGUMENT

### A.   Defendants Should Be Dismissed for Lack of Personal Jurisdiction.

In order for a court to exercise personal jurisdiction over a defendant it must have either "general" or "specific" personal jurisdiction.  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017).  Plaintiff does not  allege that the Court may assert general jurisdiction over Defendants.  Nor could she as neither Defendant is incorporated in, or has its principal place of business in, California.  *See* FAC ¶¶ 5, 8; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (for corporate entities, "the place of incorporation and principal place of business are paradigm" examples of general jurisdiction).  Separately, for a finding that specific personal jurisdiction exists, "the suit must arise out of or relate to the defendant's contacts with the forum."  *Bristol-Myers*, 137 S. Ct. at 1780. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  *Schwarzenegger*, 374 F.3d at 800 (citation omitted).  Here, Plaintiff fails to allege facts sufficient for the Court to exercise specific jurisdiction over FullStory or Blue Nile.

The Ninth Circuit examines three factors to determine when a state has a sufficient interest in a lawsuit to justify the exercise of specific jurisdiction over a nonresident corporate defendant: (1) the defendant must "purposefully direct [its] activities or consummate some transaction with the forum or resident thereof" (2) the cause of action must "arise[] out of or relate[] to the defendant's forum-related activities;" and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable."  *Schwarzenegger*, 374 F.3d at 802.  The plaintiff bears the burden on the first two prongs, and failure to establish either one requires dismissal for lack of personal jurisdiction.  *Id*.

The Supreme Court has recently emphasized that to satisfy due process, the defendant's "challenged conduct" must "connect" it to the forum "in a meaningful way."  *Walden v. Fiore*, 571 U.S.

277, 290 (2014).  That is, "the defendant's *suit-related conduct* must create *a substantial connection* with the forum State."  *Id.* at 284 (emphases added).  Here, the FAC alleges that Defendants purposefully directed their activities towards California because they were "constructively" aware that some of Blue Nile's customers would be in California due to the state's large economy.  FAC ¶ 14.  As explained below, this vague assertion fails to satisfy either of the first two prongs under *Schwarzenegger*.

### 1.    The Complaint Contains No Allegations of Purposeful Direction by Defendants.

In tort actions, as here, the first prong of the *Schwarzenegger* test "focus[es] on whether a defendant purposefully directs [its] activities at the forum and on whether the effects of those activities are felt within the forum."  *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*, 2018 WL 10689420, at *6 (N.D. Cal. July 9, 2018).  Such purposeful direction can be shown in two ways.  First, if "the commission of an intentional tort" took place in the forum, that will satisfy the purposeful direction test.  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 604 (9th Cir. 2018) (finding personal jurisdiction existed in Nevada because that was the forum in which defendant made the defamatory statements).  Second, if the defendant's conduct "takes place outside the forum," there may still be purposeful direction if that conduct has "effects inside the forum state."  *Id.*

As the FAC alleges, FullStory's business model involves "entering into voluntary partnerships with various companies and providing their software to their partners."  FAC ¶ 38.  In this case, FullStory allegedly contracted with Blue Nile, a Delaware corporation with its principal place of business in Washington.  *See id.* ¶ 5.  Plaintiff does not allege that Blue Nile and FullStory's licensing agreement was negotiated in California or entered into in California.  She does not allege that FullStory developed its software in California, or that FullStory has any other suit-related contacts with this forum other than the fact that Plaintiff happened to be in California when she visited *Blue Nile's* website.  Under recent Supreme Court precedent, this is not enough.

"A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct *by the defendant* that creates the necessary contacts with the forum."  *Walden*, 571 U.S. at 286 (emphasis added).  The *plaintiff's* suit-related contacts with the forum are not at issue.

---

Here, California is not the focal point of any of FullStory's suit-related actions.  All of FullStory's activities related to this case were achieved "without entering California, contacting any person in California, or otherwise reaching out to California."  *See Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (effect of tortious conduct felt by California-based party does not confer personal jurisdiction over a defendant whose actions all occurred out-of-state).  The most Plaintiff can claim is that FullStory entered into a licensing agreement to provide software and services to an out-of-forum company whose website was available to California residents.  Such minimal suit-related contacts do not establish that FullStory purposefully directed its software at California.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008) (plaintiff could not use eBay's national presence to establish personal jurisdiction in the forum solely because the seller sold its goods on eBay).[3]

As to Blue Nile, the FAC makes only the conclusory allegation that Blue Nile "does business throughout California and the entire United States."  FAC ¶ 6.  Plaintiff does not support this allegation with any facts, only statistics about the size of California's economy.  *See id.* ¶ 14.  Plaintiff then moves on to discuss Blue Nile's website and seems to attempt to allege specific personal jurisdiction over Blue Nile based on the fact that it "runs a website through which it has sold numerous products nationwide."  *See ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 F App'x 316, 318 (9th Cir. 2020).  But the Ninth Circuit has held that a plaintiff "cannot establish specific personal jurisdiction through nonspecific, nationwide sales," which is exactly what Plaintiff attempts to do here.  *See id.*  Allegations that the website is in both English and Spanish, the two most common languages in the United States, and that it contains a page referencing the California Consumer Privacy Act only show that Blue Nile operates a nationwide website that may be viewed by people in California.  *See* FAC ¶ 15–16.  This does not show Blue Nile specifically directs its commercial activity towards California.  And the fact that Blue Nile

---

[3] Although *Boschetto* was a contract case where the Ninth Circuit analyzed purposeful availment, rather than purposeful direction, the positioning of the defendant and eBay is analogous to FullStory's position in this case as a vendor to a website operator.  *Boschetto* is instructive here, even though this is a tort case, because as explained in *Valentine v. Nebuad, Inc.*, "'purposeful direction' developed as a means of *expanding* personal availment analysis . . . .  It would defy that reasoning to limit jurisdictional analysis for all tort claims to purposeful direction, particularly when jurisdiction based on purposeful availment is conceivable."  2009 WL 8186130, at *5 (N.D. Cal. Oct. 6, 2009).

runs a website cannot save Plaintiff when the Ninth Circuit has explicitly held that maintenance of a website, without "something more," is insufficient to establish personal jurisdiction under the *Calder* test. *Mavrix Photos, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011). In *Mavrix* that "something more" was third-party advertisers who directly targeted California residents and the very subject matter of the defendant's website—celebrities and the entertainment industry, which in the United States are concentrated in California. *Id.* at 1229–30. There is nothing like that here.

> **2.      There Are No Allegations that Plaintiff's Claims Arise Out of or Relate to Forum-Related Activities by Defendants.**

Plaintiff also must demonstrate that her claims arise out of or relate to *Defendants'* contacts *with California. See Schwarzenegger*, 374 F.3d at 802. There must be "an adequate link" between the defendant's contacts with the forum and the claims at issue. *Bristol-Myers*, 137 S. Ct. at 1781. Contacts unrelated to Plaintiff's alleged claims will not suffice for specific jurisdiction. *Id.* ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim *unrelated* to those sales.") (emphasis added).

Again, the FAC contains only threadbare allegations of forum-related contacts by Defendants, and these allegations do not establish specific contacts giving rise to any of Plaintiff's claims in this action. "What is needed—and what is missing here—is a connection between the forum and the *specific claims at issue*." *Id.* (citing *Walden*, 571 U.S. at 288–89) (emphasis added). Plaintiff's alleged harm from accessing Blue Nile's website while in California does not establish forum-related contacts as to Defendants. Just as in *Walden*, Plaintiff would have experienced the same alleged harm by visiting Blue Nile's website and interacting with FullStory's software regardless of the state she was in at the time she visited the website. *See Walden*, 517 U.S. at 290; *see also Gullen v. Facebook*, 2016 WL 245910 at *3 (N.D. Ill. Jan. 21, 2016) (finding specific personal jurisdiction did not exist in forum because Facebook's use of facial recognition software would affect any Facebook user, not just those in the forum state). And Plaintiff's threadbare allegation that Blue Nile does business throughout California offers no explanation as to how this relates specifically to the claims at issue, which arise from Plaintiff's "brows[ing]" and "perus[ing]" Blue Nile's website without ever making a purchase. *See* FAC ¶¶ 4, 44; *see also Erickson v. Neb. Mach. Co.*, No. 15-cv-01147-JD, slip op. at 7 (N.D. Cal. July 6,

2015) (Defendant's sales to California entities did not establish the suit-related contacts required for personal jurisdiction because the claim at issue did not relate to those contacts.)  Plaintiff cannot plausibly argue that by doing business throughout California Blue Nile directs its activities towards California residents who are not its customers.  Given the absence of any allegations demonstrating Defendants' forum-related conduct tied to this suit, the Court should dismiss Defendants for lack of personal jurisdiction.

**3.**     **The Exercise of Jurisdiction Over Defendants in California Is Not Reasonable.**

The final prong of the *Schwarzenegger* test requires that "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable."  *Schwarzenegger*, 374 F.3d at 802.  The Court need not consider this third prong because Plaintiff has failed to meet her burden to establish the first two prongs of the Ninth Circuit's specific personal jurisdiction test.  *See id.*  If the Court does reach this prong, however, it should find the exercise of personal jurisdiction over Defendants unreasonable.

The Ninth Circuit considers seven factors in determining whether the exercise of jurisdiction over a defendant is reasonable: "(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011).  These factors confirm that it would be unreasonable for this Court to exercise personal jurisdiction over either Defendant here: (1) the lack of allegations suggesting FullStory or Blue Nile's purposeful injection is set out above; (2) it is burdensome for FullStory, a Georgia company with no direct ties to California, to defend here, and it is similarly burdensome for Blue Nile from Washington to defend here as well; (3) there is no claim FullStory or Blue Nile violated the laws of their own states; (4) California does not have a particular interest in regulating FullStory in Georgia or Blue Nile in Washington; (5) there are no particular judicial efficiencies here by forcing Defendants to litigate in this forum; (6) this district is not critical to

Plaintiff's relief (its counsel has brought similar suits in every district in the State and numerous other wiretapping cases against other companies throughout the country); and (7) Plaintiff's counsel could pursue either defendant in their home state.  In short, FullStory and Blue Nile did not direct their activities towards California, and California has no special interest in adjudicating this case, so jurisdiction over them here would be unreasonable.

Indeed, this case involves FullStory, a Georgia-based company, which contracted with Blue Nile, based in Washington.  It would be unreasonable to require Defendants to come to California to defend themselves when Defendants never took any suit-related actions to avail themselves of California and its laws.  A finding of personal jurisdiction over Defendants here would effectively subject them to personal jurisdiction in every forum reached by Blue Nile's website—effectively every forum in the country.  To allow Defendants to be hauled into court in every forum in the country where residents merely visit Blue Nile's website would be unreasonable.  *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–02 (7th Cir. 2014) (finding no personal jurisdiction over a defendant who ran a website and made a few online sales because that "would mean that a plaintiff could bring suit in literally any state where the defendant shipped at least one item. The creation of such de facto universal jurisdiction runs counter to the approach the Court has followed since *International Shoe*, and that it reaffirmed . . . in *Walden*.").

## B. Every Claim in the First Amended Complaint Fails as a Matter of Law.

Even if the Court finds personal jurisdiction over FullStory and Blue Nile, the Court should still dismiss each claim in the FAC, for each fails as a matter of law.

### 1. The Court Should Dismiss Count 1 Because the First Amended Complaint Fails To State a Claim Under Section 631.

Section 631 of CIPA establishes liability, in relevant part, for:

> [a]ny person . . . [1] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state, or [2] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [3] who aids, agrees with, employs, or conspires with any person or persons to

unlawfully do, or permit, or cause to be done any of the acts or things
mentioned above in this section[.]

Cal. Penal Code § 631(a).  Put succinctly, the section proscribes third party access to ongoing

communications or the aiding of third-party access to ongoing communication.  For several reasons,

Plaintiff's allegations fail the requirements of Section 631.

a)      **FullStory and Blue Nile Did Not Violate Section 631 Because the
Software Did Not Collect the "Contents" of Plaintiff's Purported
Communications.**

Plaintiff's Section 631 claim fails because Section 631 prohibits only the "unauthorized access of

the '*contents*' of any communication."  *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal.

2020) (emphasis added) (quoting Cal. Penal Code § 631(a)).  The analysis of whether something is the

"contents" of a communication under CIPA is the same as it is under the federal Wiretap Act.  *Id.*

(citation omitted).  Thus, "contents" means "the intended message conveyed by the

communication . . . ."  *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).  "Contents" does

not include "information regarding the characteristics of the message that is generated in the course of

the communication" such as "the name, address, and subscriber number or identity of a subscriber or

customer."  *Id.* (citation omitted); *see also United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009)

(holding "origination, length, and time" of telephone call was not "contents").

Here, Plaintiff fails to allege that Defendants captured the "contents" of any of her purported

communications.  Despite generic references to Defendants capturing her "mouse clicks" and

"keystrokes," *see* FAC ¶¶ 4, 45, she alleges only that she "browsed" and "perused" Blue Nile's

website—expressly stating that she did not purchase anything, *see id.* ¶¶ 4, 44.  Without alleging she

ever typed anything, Plaintiff has not identified what message she intended to convey through the

"keystrokes" that Defendants allegedly captured.  Nor does Plaintiff's vague allegation that "[t]o the

best of [her] recollection, . . . she did the kinds of things people typically do when looking at potential

items to purchase online," including using the "search" function, support a reasonable inference that

Defendants collected anything amounting to the "contents" of a communication.  *See id.* ¶ 44.

Plaintiff's further allegations that Defendants "captured the date and time of the visit, the

duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the

1   operating system on her device" do not save her claim.  *See id.* ¶ 45.  Numerous courts have held that

2   this kind of information is not "the intended message conveyed by the communication."  *In re Zynga*,

3   750 F.3d at 1106.  Indeed, the Ninth Circuit in *Zynga* squarely rejected such an argument in holding that

4   "contents" does not include "information regarding the characteristics of the message that is generated in

5   the course of the communication" such as "the name, address, and subscriber number or identity of a

6   subscriber or customer."  *Id.* (citation omitted).  Plaintiff's allegations amount to nothing more than this

7   same type of record information.

8       Accordingly, the Court should dismiss Count 1 as Plaintiff attempts to base her claim on the

9   purported collection of information that was not the "contents" of her communications.  To the extent

10  Plaintiff's theory of liability as to Blue Nile extends to the aiding of FullStory to violate Section 631,

11  that liability cannot exist where FullStory did not itself violate Section 631.  Plaintiff's Section 631

12  claim should be dismissed in its entirety.

13          **b)   FullStory and Blue Nile Did Not Violate Section 631 Because Blue
                   Nile, Using FullStory's Technology, Was a Party to Plaintiff's
14                 Purported Communications.**

15      Plaintiff also has not alleged an essential element of a 631 claim: the existence of *third parties*

16  intruding upon a conversation.  It cannot be "a secret to one party to a conversation that the other party

17  is listening to the conversation; only a third party can listen secretly to a private conversation."  *Rogers*

18  *v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) ("'Eavesdropping' is the problem the Legislature meant to

19  deal with; 'eavesdrop' is defined in Webster's 7th New Collegiate Dictionary (1972) as 'to listen

20  secretly to what is said in private.'").  Thus, the statute does not create liability for someone "who is a

21  'party' to the communication."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607

22  (9th Cir. 2020) ("*Facebook III*") (citing *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection

23  631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a

24  participant to a conversation.").

25      It is indisputable that, assuming Plaintiff communicated with Blue Nile, Blue Nile was a party to

26  any such communication.  Plaintiff alleges that she "browsed" or "perused" Blue Nile's website on

27  multiple occasions.  FAC ¶¶ 4, 44.  To the extent that this browsing involved a communication, the party

28

---

1    with whom plaintiff was communicating was Blue Nile.  Accordingly, Plaintiff cannot sustain a direct

2    claim against Blue Nile under Section 631.

3            Nor has Plaintiff stated a claim as to Blue Nile based on the aiding and abetting provisions of

4    Section 631, because a party cannot be held liable for aiding and abetting the wiretapping *of its own*

5    communication under Section 631.  *See Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 954

6    (E.D. Cal. 2012).  Noting that "[p]ublished cases are in accord that section 631 applies only to third

7    parties and not participants," the court in *Powell* held that the participant in a call could not be held

8    liable for aiding and abetting wiretapping under Section 631.  *Id.* at 955.  This holding makes logical

9    sense; if a participant does not violate Section 631 by wiretapping his own communication, he also does

10   not violate Section 631 by aiding another party in wiretapping his own communication.  Only one other

11   case has considered aiding and abetting liability under Section 631, *Revitch v. New Moosejaw LLC*,

12   2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), but the court there provided little reasoning in holding that

13   a party to a communication could be liable under an aiding and abetting theory, and made no attempt to

14   reconcile this holding with Section 631's party exception.  This Court should not follow *Revitch* and

15   should instead affirm the well-established principle that Section 631 applies to third parties only.

16           Plaintiff's claim still fails even if a party to a communication could be held liable for aiding and

17   abetting the wiretapping *of its own* communication under Section 631.  For the reasons explained below,

18   just as Blue Nile was a party to the communication, so too was FullStory as Blue Nile's service provider

19   deployed by Blue Nile to collect information regarding user interactions with the website and provide

20   that information to Blue Nile for Blue Nile's own benefit.  Thus, Blue Nile did not "aid, agree with,

21   employ, or conspire with" FullStory to violate Section 631 because FullStory's actions did not violate

22   the statute either.

23           Nor can FullStory be held liable under Section 631 because it too falls within the party

24   exception.  While evaluating the party exception may be more straightforward in the context of

25   telephonic communications—since CIPA was specifically drafted with those types of communications

26   in mind—the same principles can be applied here, where Blue Nile used FullStory's SaaS.  In *Rogers*

27   for example, the court held that the defendant, a "public information officer" for San Jose, could not be

28   liable for tape recording and disclosing a conversation he had with a candidate for city council where

that candidate called the defendant and the defendant never alerted the candidate to his recording of the call.  52 Cal. App. 3d at 898 (Section 631 does not prohibit "the recording of a conversation made by a participant rather than by a third party.").  Similarly, in *Membrila v. Receivables Performance Management, LLC*, the court held that the defendant debt collector could not be liable for recording and monitoring various telephone conversations it had with the plaintiff because it was a party to those conversations.  2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010).  In the context of the internet, where evaluating the party exception may be less straightforward, the Ninth Circuit instructs courts to examine the "technical context" presented by the communications at issue to determine who the parties to those communications are.  *See Facebook III*, 956 F.3d at 607–08.

Here, based on Plaintiff's own allegations, FullStory cannot be considered a third party to Plaintiff's alleged communications with Blue Nile.  Plaintiff alleges that Blue Nile voluntarily and intentionally embedded FullStory's software code on Blue Nile's website, FAC ¶ 42, and that Plaintiff's data was transmitted to FullStory's servers so that FullStory could "supply that information" to Blue Nile, *id*. ¶ 41.  In other words, FullStory provides a service to Blue Nile for the sole purpose of providing analytics to Blue Nile.  Notably, Plaintiff nowhere alleges that FullStory used Plaintiff's data for any purpose other than to provide it to Blue Nile or was acting in any capacity other than as Blue Nile's service provider.  Plaintiff does not, for example, allege that FullStory sold her data, used it for advertising purposes, or disclosed it to any third party.  Indeed, Plaintiff alleges precisely the opposite.  She alleges that FullStory offers software-as-a-service; that is, Blue Nile is effectively renting space on FullStory's servers where Blue Nile can store data related to website interactions and view that data using FullStory's dashboard.  *See FAC ¶¶ 9, 33.

These actions do not amount to surreptitious wiretapping by a *third party*.  FullStory's involvement in facilitating the collection of data regarding Plaintiff's interactions with Blue Nile's website is simply the modern-day SaaS equivalent of the city information officer in *Rogers* having the phone company install a "tape recorder jack" on his phone so that he could, for example, record conversations and "relay parts of [those] conversations . . . to local radio stations for broadcast." *Rogers*, 52 Cal. App. 3d at 897 (upholding dismissal of Section 631 claim where defendant was a party to the conversation he recorded).  This is no different than if the defendant in *Rogers* had used SaaS to

record, store, listen to, and analyze his conversations with the plaintiff there.  Indeed, unlike the defendant in *Rogers*, who provided recorded conversations to radio stations for public broadcast, Plaintiff here does not allege that FullStory or Blue Nile divulged any of her information to third parties.

The Ninth Circuit's recent decision addressing the party exception demonstrates how FullStory's service is far afield from the actions of defendants that courts have found to be third parties to a communication.  In *Facebook III*, the Ninth Circuit held that Facebook could not avail itself of the party exception where Facebook allegedly used "plug-ins to track users' browsing histories when they visit[ed] third-party websites, and then compil[ed] these browsing histories into personal profiles which [were] sold to advertisers to generate revenue."  956 F.3d. at 596.  Facebook's plug-ins performed these actions even if the visitor to those third-party websites was not separately signed into Facebook, and there were no allegations that the third-party website owners had access to or used the data collected by Facebook through those plug-ins for their own purposes.  *Id.*

Looking at the alleged "technical context," as *Facebook III* requires, Plaintiff does not allege that FullStory did anything with the data allegedly collected from her interactions with Blue Nile's website other than make it available to Blue Nile to review, nor does she allege that FullStory otherwise operated like a third party in any respect.  The sole function of FullStory's code is to sit in Blue Nile's own code on the website and allow Blue Nile to see how users interact with its own website.  In other words, Blue Nile uses FullStory's software the same way the defendants in *Rogers* and *Membrila* used recorders— behavior the courts there made clear was not prohibited under the statute.  *See Rogers*, 52 Cal. App. 3d at 899; *Membrila*, 2010 WL 1407274, at *2.

To hold that FullStory violates Section 631 in these circumstances would criminalize the ubiquitous use of cloud software that is required to ensure that websites, and indeed the internet in general, function.  Plaintiff's conclusory allegation to the contrary does not withstand scrutiny.  *See* FAC ¶ 37.  Take this Court's website, for instance, https://www.cand.uscourts.gov/.  The Northern District of California's website utilizes a search function "Enhanced by Google" to allow visitors to search its website.  At the time of the filing of the original complaint, that search box, using Google's search engine, immediately started populating suggested searches the moment a user started typing information.  For example, if a user typed in "B," Google automatically populated the search field with the suggested

1   search "Laurel Beeler."  Plaintiff's theory of liability would mean that both the Court and Google were

2   violating Section 631, as a user of the search function would be sharing its inquiry with Google.  And

3   Plaintiff's theory would mean that *any* website that uses another party's software to power and enhance

4   its functionality would be engaging in criminal eavesdropping—even where the software serves only to

5   analyze information on the website and does not provide that information to anyone else for any other

6   purposes (such as targeted advertising).

7          Because FullStory and Blue Nile were parties to Plaintiff's communications, they cannot be held

8   liable under Section 631 and neither can Blue Nile be held liable for aiding or conspiring with FullStory

9   to violate Section 631 as FullStory did not commit an underlying violation.  Count 1 should be

10  dismissed.

                **c)      The Conduct Alleged Did Not Violate Section 631 Because It Was**
11                             **Disclosed in Blue Nile's Privacy Policy, Relied on by the First**
12                             **Amended Complaint.**

13         Plaintiff's Section 631 claim also fails because Blue Nile disclosed the alleged interception to

14  Plaintiff.  The gravamen of a Section 631 claim is that a third party *surreptitiously* intruded upon a

15  conversation.  "'Eavesdropping' is the problem the Legislature meant to deal with" in enacting Section

16  631.  *Rogers*, 52 Cal. App. 3d at 899.  To "'[e]avesdrop' is 'to listen secretly to what is said in private.'"

17  *Id.* (quoting Webster's 7th New Collegiate Dictionary (1972)).  But there is nothing surreptitious or

18  hidden about FullStory's service or data collection, as alleged.  The privacy policy for Blue Nile's

19  website explicitly disclosed to users like Plaintiff that data regarding their interactions with the website

20  could be collected by Blue Nile *and by Blue Nile's service providers*.  Indeed, it is the reality of modern

21  websites that they rely on service providers for their operation, and that a user's interactions with a

22  website will be collected and shared with the website operator and its service providers.

23         Here, Blue Nile's home page contains a link to its privacy policy, as is standard for modern

24  websites.  And the privacy policy discloses that Blue Nile engages in the exact conduct alleged in the

25

26

27

28

1   FAC.[4]  Nowhere does the FAC allege facts to support any inference that the alleged data collection was

2   surreptitious.  Nor could Plaintiff allege such facts, because Blue Nile's policy explicitly states that Blue

3   Nile and third parties may collect information from users of Blue Nile's website, and that such

4   information may be shared with third parties like FullStory.  *See* Declaration of Jenna Zhang ("Zhang

5   Decl."), Ex. A.  For example, the policy contains a section that describes the data collection that occurs

6   "when you navigate to our site[.]"  *Id.* (capitalization omitted).  The policy discloses that the categories

7   of data collected from website visitors includes "[i]nformation gathered through cookies and other

8   tracking technology[,]" "[d]evice and browser information[,]" "[i]nformation gathered through web

9   server logs[,]" and "[g]eneral location information[.]"  *Id.*  The policy further provides that this data is

10  shared with "[s]ite optimization service providers" and "[m]arketing service providers[.]"  *Id.*  The FAC

11  alleges that FullStory is a marketing service provider.  FAC ¶ 9.  The policy also discloses that Blue Nile

12  uses data collected from website visitors to "optimize performance of the site[,]" "understand [its]

13  customer . . . behavior[,]" and "improve . . . [the] overall customer experience[.]"  Zhang Decl., Ex. A.

14      Finally, the policy specifically discloses the methods of collection at issue here, noting that Blue

15  Nile and "[its] business partners" may collect users' information using tracking technologies that include

16  cookies and log files.  *See id.*  The FAC's allegation that "FullStory's code is not a cookie[,]" FAC ¶ 28,

17  is implausible and irrelevant.  Blue Nile's privacy policy defines a cookie as "a small file that resides on

18  your computer, mobile phone, or other device, and allows us or our business partners to recognize your

19  device when you return to our Site *and record information about your usage of our Site*."  Zhang Decl.,

20  Ex. A (emphasis added).  The FAC alleges that FullStory's technology functions by adding a snippet of

21  code—*i.e.*, a line of text—to a website, and that this file collects usage information from a user's web

22  browser.  FAC ¶¶ 28–29.  This is precisely the method of collection that Blue Nile's privacy policy

23  discloses because this text *is* a cookie, which is nothing more than a "small text file."  *In re Facebook*

---

[4] Courts in this District routinely consider website privacy policies at the motion to dismiss stage where, as here, a plaintiff's claim depends on the language of the privacy policy and it is referenced in the complaint.  *See, e.g., Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015). Here, the FAC acknowledges the presence of Blue Nile's privacy policy and contains allegations that Blue Nile's privacy policy "did not disclose the wiretapping or FullStory."  FAC ¶ 57.

*Internet Tracking Litig.*, 140 F. Supp. 3d 922, 926 (N.D. Cal. 2015) ("*Facebook I*"). Thus, regardless of Plaintiff's subjective understanding of the term cookie, Blue Nile discloses the complained-of data collection, rendering implausible any allegation that data collection was surreptitious.

In sum, Plaintiff's conclusory allegations that FullStory "secretly observe[d] and record[ed] website visitors' keystrokes, mouse clicks, and other electronic communications," FAC ¶ 1, cannot be reconciled with the Blue Nile's publicly available privacy policy. Given that Blue Nile transparently discloses that it, and its service providers like FullStory, engage in the behavior at issue, there is nothing surreptitious about their actions, which cannot amount to wiretapping under Section 631.

### 2. The Court Should Dismiss Count 2 Because Plaintiff Lacks Standing To Assert Such a Claim and Because the First Amended Complaint Fails To State a Claim Under Section 635.

Parroting the statute's language, Plaintiff asserts that Blue Nile and FullStory violated California Penal Code Section 635 because "each Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another." FAC ¶ 81 (quoting Cal. Penal Code § 635). This is wrong as a matter of law for several reasons.

#### a) Plaintiff Lacks a Private Right of Action and Standing To Assert a Claim Under Section 635.

Plaintiff lacks both statutory and constitutional standing to bring a Section 635 claim. She lacks a private right of action under Section 635 because, under CIPA, only those who have "been injured by a violation of this chapter may bring an action against the person who committed *the violation*." Cal. Penal Code § 637.2(a) (emphasis added). But the mere manufacture, possession, or sale of an eavesdropping "device" by a defendant (as alleged here under Section 635) causes no injury to a person such as Plaintiff. Indeed, in a case involving the analogous federal statute, 18 U.S.C. § 2512, the court held it would be "constitutionally problematic" to afford a private right of action against defendants who merely possessed a wiretapping device because "plaintiffs who suffered no injury in fact would still be able to sue." *Cohen v. Casper Sleep, Inc.*, 2018 WL 3392877 at *5 (S.D.N.Y. July 12, 2018); *see also DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1129 (11th Cir. 2004); *In re Lenovo Adware Litig.*, 2016 WL 6277245, at *7 (N.D. Cal. Oct. 27, 2016); *DirecTV Inc. v. Hart*, 366 F. Supp. 2d 315, 323 (E.D.N.C.

2004) (citing cases) (all finding no private right of action under the analogous 18 U.S.C. § 2512(b)). Plaintiff does not allege that she was injured in any way by the supposed violation of Section 635. *See* FAC ¶¶ 78–84. Without such an allegation, Plaintiff has no private right of action under Section 635.

For a parallel reason, Plaintiff lacks Article III standing to assert a claim under Section 635. A plaintiff must have "suffered an injury in fact" to have standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). That is, she "must show that [s]he . . . suffered an invasion of a legally protected interest that is concrete and particularized" from the alleged violation. *Id*. at 1548 (citation omitted). Defendants' actions must have "affect[ed] the plaintiff in a personal and individual way." *Id*. And a plaintiff that demonstrates standing for a violation of one section of a statute does not automatically meet the standing requirement for a violation of another section of that same statute. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733–34 (2008). Here, as noted, Plaintiff makes no allegation of injury from the alleged violation of Section 635.[5] Claiming only that Defendants manufactured, sold, or possessed a "device" does not establish any harm to Plaintiff different from any member of the public, so the requisite "injury in fact" required for standing under Article III is absent. *See Spokeo*, 136 S. Ct. at 1547.

### b) FullStory's Code Is Not a Device Primarily or Exclusively Designed for Eavesdropping.

Section 635 only applies to a "device" that is "primarily or exclusively" designed for eavesdropping. As an initial matter, there is no reason to think that FullStory's code, which Blue Nile is alleged to have embedded on its website, qualifies as a "device" under the statute. Plaintiff refers to it as a "snippet of code[.]" FAC ¶ 28. But courts in this Circuit have rejected the argument that a "cookie" was a device where plaintiff had defined cookie "as a small text file containing a limited amount of information which sits idly on a user's computer until contacted by a server." *See Facebook I*, 140 F. Supp. 3d at 937. There, in addressing a different section of CIPA, the plaintiff alleged that a cookie was a "device" and thus qualified as a "machine, instrument, or contrivance" used to intercept

---

[5] Plaintiff's allegations in support of her Section 631 claim explicitly contend that "[t]he violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing." FAC ¶ 76. In notable contrast, Plaintiff's Section 635 claim contains no such allegation as to any purported Article III injury.

communications.  *Id.*  The court rejected plaintiffs' threadbare definition, holding that the plaintiffs must actually "include facts in their pleading to show why" the cookie was a "device" that could qualify as a "machine, instrument, or contrivance."  *Id.*[6]          Here, the FAC similarly lacks any factual allegations showing why a snippet of code qualifies as a device under Section 635.

Even if FullStory's code can be considered a "device," the FAC's factual allegations do not support a plausible inference that the code is "primarily or exclusively designed or intended for eavesdropping," as required by Section 635.  And, the fact Plaintiff has not established that the alleged data collection at issue here amounts to a violation of Section 631, for the multiple independent reasons set out above, also requires dismissal of Plaintiff's Section 635 claim.  FullStory's software code cannot be primarily or exclusively designed for eavesdropping if Plaintiff has failed to establish that eavesdropping occurred here.

In addition, rather than support the conclusory allegation that FullStory's code is "primarily or exclusively designed or intended for eavesdropping," the FAC's factual allegations demonstrate the contrary: that FullStory's software is designed and intended to help companies improve their websites. The original Complaint describes FullStory's software as providing "marketing analytics[,]" Compl. ¶ 14, and notes that the purpose of FullStory's software is to "help businesses improve their website design and customer experience"—not to eavesdrop.  *Id.* ¶ 15.  The FAC similarly alleges that FullStory helps retailers understand how users interact with their websites.  FAC ¶¶ 22, 24, 26.  Therefore, despite Plaintiff's conclusory attempt to allege otherwise, FullStory's software code and the service based on that software is best understood as "part of [the] routine internet functionality" that makes digital

---

[6] Dictionary definitions support a narrow interpretation of "device" here.  For example, Merriam-Webster defines "device" as "something devised or contrived: such as . . . a piece of equipment or a mechanism designed to serve a special purpose or perform a special function //smartphones and other electronic *devices* // a hidden recording *device*)."  *Device*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/device (last visited Mar. 3, 2021).  And the Oxford English Dictionary defines "device" as "an invention, contrivance; *esp.* a mechanical contrivance (usually of a simple character) for some particular purpose."  *Device*, Oxford English Dictionary, https://www.oed.com/view/Entry/51464 (last visited Mar. 3, 2021).  In addition, given that CIPA is a penal statute, any ambiguity in the meaning of the word "device" should be interpreted narrowly under the rule of lenity.  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (applying rule of lenity to civil application of penal statute).

commerce possible.  *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) ("*Facebook II*") ("[W]ebsites routinely embed content from third-party servers in the form of videos, images, and other media, as well as through their use of analytics tools, advertising networks, code libraries and other utilities.").  Digital retailers—and indeed websites of all kinds—use analytics software like FullStory's for a host of legitimate reasons that do not amount to eavesdropping. Permitting Plaintiff's claims to proceed would subvert the network architecture on which the internet is built and could potentially render countless website operators liable as eavesdroppers.

> **c)**     **Even if FullStory's Code Was a Covered Device, Blue Nile's Conduct Is Not Prohibited by Section 635.**

Even if FullStory's code can be considered a device under the statute, Blue Nile did not engage in any of the actions prohibited by the statute.  Section 635 imposes liability on anyone who "manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another" a device "primarily or exclusively designed or intended for eavesdropping."  Cal. Penal Code § 635.  The only term in that list that could plausibly apply to Blue Nile is "possess." However, as used in the statute, the term "possess" is ambiguous, leaving the application of various canons of statutory interpretation appropriate.  And under either of the related statutory interpretation doctrines *ejusdem generis* and *noscitur a sociis*, it is clear that the Court should not read "possess" so broadly as to include Blue Nile's actions here.

The Supreme Court has instructed that "the plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole."  *Yates v. United States*, 574 U.S. 528, 537 (2015) (alterations and citations omitted).  In finding the term "tangible object" ambiguous, the Court observed that while the term "tangible object" in some contexts should be read to have "a meaning as broad as its dictionary definition," when interpreting the statute at issue in *Yates* "the context of [that section] tugs strongly in favor of a narrower reading."  *Id*. at 539.

Here, the general term "possesses" in Section 635 is surrounded by narrower and more descriptive terms revealing the ambiguity of "possesses."  As such, the Court should apply either of the related canons of *ejusdem generis* or *noscitur a sociis*.  *Ejusdem generis* dictates that when a "more

1
2
3
4
5
6
7
8
9
10
11

general term follows more specific terms in a list, the general term is usually understood to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018). Similarly, under *noscitur a sociis*, "a word is known by the company it keeps—to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth" to the statute. *Yates*, 574 U.S. at 543 (citations omitted). Thus, the general term "possess" in Section 635 should be read in context of the more specific terms around it to be limited to the actual manufacturing chain and distribution and sales channels. *See Epic Sys. Corp.*, 138 S. Ct. at 1625. If the legislature intended to extend liability to the end user of such a "device" it could have easily included more definitive terms like "purchased" or "used." It did not. Thus, "possesses" should be read to include only those entities or individuals involved in the manufacture, distribution, or sale of a prohibited device, which does not include Blue Nile here.

12
13
14

Because Plaintiff has failed to plausibly allege that FullStory's software code is either a "device" or is "primarily or exclusively designed for eavesdropping," or that Blue Nile plausibly engaged in any act prohibited by the statute, the Court should dismiss Count 2.

15
16

### 3. The Court Should Dismiss Count 3 Because Plaintiff Cannot State a Claim for Invasion of Privacy Under the California Constitution.

17
18
19
20
21
22

Plaintiff's claim for violations of her constitutional right to privacy fails as a matter of law. An invasion of privacy claim under the California Constitution requires plaintiffs to show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion constitutes a "serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012). In determining whether a reasonable expectation of privacy exists, courts consider the "customs, practices, and physical settings" surrounding a particular defendant's activities. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994).

23
24
25
26
27
28

Here, Plaintiff has failed to plausibly allege a reasonable expectation of privacy in her browsing of Blue Nile's website because Plaintiff has not alleged that she provided any personally identifiable information ("PII") to Defendants. Count 3 of the FAC asserts that Plaintiff "ha[s] a reasonable expectation that [her] PII and other data would remain confidential[.]" FAC ¶ 89. But Plaintiff does not allege that she provided *any* PII to Defendants. For example, Plaintiff alleges that, "[t]o the best of [her]

recollection, . . . she did the kinds of things people typically do when looking at potential items to purchase online, such as clicking on product pages, clicking on images of products she was interested in, scrolling through pages, using dropdown menus and filtering to select product categories, and using the website search tool." *Id.* ¶ 44.  Notably absent from the FAC is any allegation that Plaintiff provided PII to Defendants.  Indeed, Plaintiff's vague suggestion that she "us[ed] the website search tool," does not come close to plausibly alleging that she entered any text in a field on the website that revealed anything about her.  A person viewing a webpage cannot plausibly allege a reasonable expectation of privacy in their mouse clicks and browsing data from that very same website.  Because Plaintiff merely browsed a website and does not allege she provided any information to Defendants, Plaintiff cannot plausibly allege a reasonable expectation of privacy.

In addition, even if Plaintiff had alleged she provided PII to Defendants, she cannot plausibly allege a reasonable expectation of privacy in the data that she *intentionally* transmitted to Blue Nile and FullStory.  That Plaintiff alleges she was unaware of FullStory's specific role in the website's functionality does not alter this analysis.  The use of third-party vendors, programs, software, and third-party cloud storage for a variety of purposes is commonplace on the internet.  Plaintiff's conclusory allegation to the contrary notwithstanding, *see* FAC ¶ 37, reasonable internet users recognize that when they input information on a website, the businesses running those websites "routinely embed content from third-party servers . . . through their use of analytics tools, advertising networks, code libraries and other utilities." *Facebook II*, 263 F. Supp. 3d at 846.  So too here: Plaintiff cannot plausibly allege a reasonable expectation of privacy in data that she voluntarily provided to a website and was allegedly collected by a service provider for the purpose of operating the website.

Even if Plaintiff could plausibly allege a reasonable expectation of privacy, the facts she alleges do not permit a reasonable inference that the alleged breach of that privacy constituted an "egregious breach of social norms."  Invasions of privacy must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37.  Courts typically find this standard is satisfied only in egregious circumstances, such as dissemination by the police of gruesome photographs of a deceased car accident victim, disclosure of a patient's HIV status, or improper use of confidential mental health records.  *See,*

*e.g.*, *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856 (2010); *Urbaniak v. Newton*, 226 Cal. App. 3d 1128 (1991); *Taus v. Loftus*, 40 Cal. 4th 683 (2007).

Here, Plaintiff alleges that FullStory captured her "keystrokes and mouse clicks" while she browsed Blue Nile's website.  FAC ¶ 45.  Although she speculates that this amounted to the collection of certain "electronic communications," Plaintiff does not allege that she in fact provided any information for Defendants to collect.  *See id.* ¶¶ 44–46.  Indeed, while Plaintiff alleges that Defendants *could* collect an individual's payment card information, she does not allege that she ever entered such information into the website during her "browsing" or that Defendants actually collected her payment card information.  *See id.*  The collection of browsing information, and nothing more, cannot constitute "an egregious breach of the social norms."  *See Hill*, 7 Cal. 4th at 37.  Courts in this Circuit have found that "[e]ven *disclosure* of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms.'"  *Low*, 900 F. Supp. 2d at 1025 (emphasis added); *see In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (finding alleged commingling and disclosure of personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences is not highly offensive); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (disclosing for marketing purposes was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1050, 1063 (N.D. Cal. 2012) (Apple's *disclosure* of the plaintiffs' addresses, gender, age, and current location to third-party apps did not "constitute an egregious breach of social norms.").  If disclosure of such personal information is not an egregious breach of social norms, it cannot be that the mere collection of browsing information meets this high bar.  No authority supports the notion that a business egregiously breaches social norms when it receives data from a website visitor or analyzes how a website visitor interacts with its own website—all of which regularly occurs on the Internet.

For all these reasons, Plaintiff's Count 3 fails as a matter of law and should be dismissed with prejudice.

## V.    CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's First Amended Complaint with prejudice.

1

DATED:  March 4, 2021

COVINGTON & BURLING LLP

2

By:  *Emily Johnson Henn*

3

EMILY JOHNSON HENN (SBN 269482)

4

COVINGTON & BURLING LLP
3000 El Camino Real

5

5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112

6

Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

7

Email: ehenn@cov.com

8

SIMON J. FRANKEL (SBN 171552)

9

PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP

10

Salesforce Tower

11

415 Mission Street, Suite 5400
San Francisco, CA 94105-2533

12

Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

13

Email: sfrankel@cov.com
Email: pcarey@cov.com

14

15

*Attorneys for Defendants*
*Blue Nile, Inc. and FullStory, Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28