EMILY JOHNSON HENN (SBN 269482)
ehenn@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

SIMON J. FRANKEL (SBN 171552)
sfrankel@cov.com
MATTHEW Q. VERDIN (SBN 306713)
mverdin@cov.com
JENNA L. ZHANG (SBN 336105)
jzhang@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

*Attorneys for Defendants*
*Blue Nile, Inc. and FullStory, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN JOHNSON, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BLUE NILE, INC., and FULLSTORY, INC.,<br><br>　　　　Defendants. | Civil Case No.: 3:20-cv-08183-LB<br><br>**DEFENDANTS BLUE NILE, INC. AND FULLSTORY, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), AND 12(b)(6)**<br><br>Hearing Date:  July 29, 2021<br>Hearing Time: 9:30 a.m.<br><br>Honorable Laurel Beeler |

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION TO DISMISS .................................................. 1

STATEMENT OF RELIEF SOUGHT ....................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 2

I.    INTRODUCTION ......................................................................................... 2

II.   BACKGROUND .......................................................................................... 3

III.  ARGUMENT ............................................................................................... 5

    A.   The Second Amended Complaint Fails to State a Claim ......................... 5

        1.   Plaintiff Fails to State an Eavesdropping Claim Under Section 631(a)...... 5

            a)   FullStory Was Not a Third-Party Eavesdropper on Plaintiff's Communications with Blue Nile ....................................................... 5

            b)   Blue Nile Cannot Be Held Liable for Aiding and Abetting Eavesdropping ................................................................................ 9

            c)   The Eavesdropping Claim Fails to the Extent It Is Predicated on Non-Content Information ................................................................ 9

            d)   Blue Nile's Privacy Policy Forecloses Plaintiff's Claims. .......... 10

        2.   Plaintiff Lacks Standing to Pursue—and Fails to State—a Claim for the Sale or Possession of Eavesdropping Software Under Section 635(a)..... 11

    B.   Blue Nile and FullStory Are Not Subject to Personal Jurisdiction In California. ........................................................................................... 14

IV.   CONCLUSION ........................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................8

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ..........................................................................15

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ...............................................................5

*Cohen v. Casper Sleep Inc.*,
    2018 WL 3392877 (S.D.N.Y. July 12, 2018) ....................................................12

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ..........................................................................16

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ........................................................................3, 4

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ..................................................................6, 7, 8, 10

*In re Facebook Internet Tracking Litig.*,
    140 F. Supp. 3d 922 (N.D. Cal. 2015) .............................................................12

*In re Facebook Internet Tracking Litig.*,
    263 F. Supp. 3d 836 (N.D. Cal. 2017) .............................................................13

*Graham v. Noom, Inc.*,
    2021 WL 1312765 (N.D. Cal. Apr. 8, 2021) ................................................. *passim*

*J. Edwards Jewelry Distrib., LLC v. Wells Fargo & Co.*,
    2019 WL 2329248 (N.D. Cal. May 31, 2019) ..................................................13

*Johnson v. Blue Nile*,
    2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ................................................. *passim*

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ..........................................................................13

*Membrila v. Receivables Performance Mgmt., LLC*,
    2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ...........................................................................6

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) .............................................................................................16

*Powell v. Union Pac. R.R. Co.*,
    864 F. Supp. 2d 949 (E.D. Cal. 2012).....................................................................................9

*Revitch v. New Moosejaw, LLC*
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)......................................................................8, 9

*Ribas v. Clark*,
    38 Cal. 3d 355 (1985) .........................................................................................................11

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975) ...........................................................................................*passim*

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ...............................................................................................14

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)........................................................................................................12

*Voodoo SAS v. SayGames LLC*,
    2020 WL 3791657 (N.D. Cal. July 7, 2020)........................................................................15

*Walden v. Fiore*,
    571 U.S. 277 (2014).............................................................................................................16

*Warden v. Kahn*,
    99 Cal. App. 3d 805 (1979) ...................................................................................................6

*Yates v. United States*,
    574 U.S. 528 (2015)............................................................................................................14

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ..........................................................................................9, 10

**Statutes**

Cal. Penal Code § 631(a) ........................................................................................... *passim*

Cal. Penal Code § 635(a) ........................................................................................... *passim*

Cal. Penal Code § 637.2(a) ...................................................................................................12

Ga. Code Ann. § 16-11-66(a) ...............................................................................................16

**Other Authorities**

*Device*, Oxford English Dictionary, https://www.oed.com/view/Entry/51464 (last visited
    May 25, 2021)........................................................................................................................13

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on July 29, 2021, at 9:30 a.m., or as soon thereafter as available, in the courtroom of the Honorable Laurel Beeler, located at 450 Golden Gate Avenue, Courtroom B, 15th Floor, San Francisco, California 94102, defendants Blue Nile, Inc. ("Blue Nile") and FullStory, Inc. ("FullStory"), will and hereby do move to dismiss plaintiff's second amended complaint (Dkt. 53) pursuant to Federal Rules of Civil Procedure, 12(b)(1), 12(b)(2), and 12(b)(6). This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Matthew Q. Verdin and accompanying exhibits, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, and any other matter that the Court may properly consider.

## STATEMENT OF RELIEF SOUGHT

Blue Nile and FullStory seek an order dismissing the claims against them with prejudice for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether this Court should dismiss the claims in this action against Blue Nile and FullStory for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

2. Whether this Court should dismiss plaintiff's claim under section 635(a) of the California Invasion of Privacy Act for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

3. Whether this Court should dismiss Blue Nile and FullStory from this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

FullStory is a vendor that offers software-based services to help its clients improve the design and user experience on their websites.  Blue Nile is an online company, and a client of FullStory, that helps consumers find engagement rings and jewelry at a great value.  Blue Nile uses FullStory's software to collect information about, and later analyze, what visitors are doing on its website (bluenile.com), such as mouse clicks and keystrokes, so that it can better understand its visitors' experience.  Plaintiff seeks to criminalize this routine use of a vendor to provide client services, characterizing FullStory's services as wiretapping (*i.e.*, eavesdropping) in violation of her right to privacy under California's Invasion of Privacy Act.  The Court should dismiss plaintiff's third complaint alleging these meritless claims for the same reasons it dismissed the prior complaint, but this time with prejudice.

*First*, plaintiff's new complaint continues to suffer from the same defect that plagued the prior complaints: the failure to plausibly allege that FullStory eavesdropped on plaintiff's communications with Blue Nile.  As this Court held in dismissing the prior complaint, "as a service provider, FullStory is an extension of [Blue Nile]," a party to the communication, and therefore "is not a third-party eavesdropper."[1]  *Graham v. Noom, Inc.*, 2021 WL 1312765, at *5 (N.D. Cal. Apr. 8, 2021); *Blue Nile*, 2021 WL 1312771, at *2.  Plaintiff's new complaint does not undercut this holding because plaintiff does not allege that FullStory stepped out of its role as a service provider to Blue Nile, or that it sold plaintiff's information to third parties (it did not).  Rather, plaintiff alleges in more detail how FullStory's software collects and analyzes website data *for its clients*, reinforcing factual allegations that this Court already accepted as true in its prior order.  While plaintiff's complaint suffers from other defects, this defect permeates, and is fatal to, all of plaintiff's claims.

---

[1] The Court's order in *Blue Nile* incorporates the reasoning of the Court's order in the related case, *Noom*, regarding plaintiff's two claims and asserted personal jurisdiction over defendants.  *Johnson v. Blue Nile*, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) ("The reasoning in *Graham v. Noom* controls here[.]").  Accordingly this motion cites to the *Noom* order, as incorporated into the *Blue Nile* order, for the Court's applicable reasoning.

*Second*, plaintiff fails to carry her burden to show that either Blue Nile, a Washington-based company incorporated in Delaware, or FullStory, a Georgia-based company incorporated in Delaware, is subject to personal jurisdiction in California. Plaintiff continues to predicate personal jurisdiction over Blue Nile and FullStory on the same deficient eavesdropping allegations that run through each of plaintiff's claims. For that reason, the Court should reach the same conclusion as it did in its prior order and find that, without the eavesdropping claims, there is no personal jurisdiction over either defendant. *Id.* at *3.

## II.   BACKGROUND

***This Lawsuit.***  In November 2020, plaintiff filed this putative class-action lawsuit against FullStory, a Georgia-based company, which provides a software-based service to help its client, Blue Nile, improve the design and user experience on its website. Dkt. 1 ("Compl.") ¶ 15. Blue Nile embedded FullStory's software code on its website (bluenile.com), which in turn collects certain data about visitors who interact with the website (*e.g.*, keystrokes, mouse clicks). Second. Am. Compl. ¶ 44. FullStory's software allows Blue Nile to later analyze a visitor's interactions with its website, including through a session replay feature that provides a "high-fidelity reproduction of a person's experience" on the website (*i.e.*, "it's not video"). *Id.* ¶¶ 19–21.[2]  While a visitor is still on the site, Blue Nile can see the reproduction "in near," but not in actual, "real time." *Id.* ¶ 34.

Plaintiff's core allegation is that FullStory eavesdropped on—and that Blue Nile aided and abetted the eavesdropping of—plaintiff's communications with Blue Nile when she visited Blue Nile's website. *See id.* ¶¶ 85–98. She asserts that this conduct violated her right to privacy under California's Invasion of Privacy Act ("CIPA"). *Id.*

***The Court's Dismissal of Plaintiff's Amended Complaint.***  In April 2021, the Court granted defendants' motion to dismiss plaintiff's amended complaint, holding that plaintiff failed to plausibly allege that FullStory was a third-party eavesdropper. *Blue Nile*, 2021 WL 1312771, at *2. The Court

---

[2] Declaration of Matthew Q. Verdin ("Verdin Decl.") Ex. A at 4 (webpage explaining with respect to the feature that "it's not video, but a high-fidelity reproduction of a person's experience"). This webpage is incorporated by reference into the second amended complaint. *See* Second Am. Compl. ¶ 26 n.4 (citing webpage); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

reasoned that, "as a service provider, FullStory is an extension of [Blue Nile]," a party to the communications with plaintiff. *Noom*, 2021 WL 1312765, at *5. "It provides a tool—like the tape recorder in *Rogers* [v. *Ulrich*, 52 Cal. App. 3d 894 (1975)]—that allows [Blue Nile] to record and analyze its own data in aid of [Blue Nile's] business." 2021 WL 1312765, at *5. The Court distinguished the conduct of defendants that courts have found to be third-party eavesdroppers, where the defendants "were independent parties who mined information from other websites and sold it." *Id.* Because FullStory used plaintiff's data only in its capacity as a service provider to its client, Blue Nile, the Court held that FullStory "is not a third-party eavesdropper." *Id.* The Court granted leave to amend (except as to plaintiff's withdrawn claim three, which the Court dismissed with prejudice). *Blue Nile*, 2021 WL 1312771, at *3.

   ***Plaintiff's Second Amended Complaint.***  Plaintiff filed a second amend complaint, which adds new allegations reinforcing the Court's conclusion that FullStory used plaintiff's data only in its capacity as a service provider to its client, Blue Nile. Plaintiff alleges in more detail how FullStory's software collects and analyzes website data for its clients—factual allegations that this Court already accepted as true in its prior order. Second Am. Compl. ¶¶ 47, 54–55. Plaintiff also alleges that "some implementations" of FullStory's software have the capability to use other data a client provides to allow a client to better analyze its own data; however, plaintiff does not allege that such a capability is included or used in Blue Nile's implementation of FullStory's software. *Id.* ¶¶ 49–52. In other words, "[a]t the base level," plaintiff alleges that "FullStory analyzes data in order to index it *for its clients*." *Id.* ¶ 49 (emphasis added). There are no allegations that FullStory acted as an "independent part[y]" that "mined information" about plaintiff "and sold it," or that FullStory otherwise stepped out of its role as a service provider to Blue Nile. *Noom*, 2021 WL 1312765, at *5.[3]

---

[3] The second amended complaint quotes Blue Nile's privacy policy (Second Am. Compl. ¶¶ 67–73), two patents (*Id.* ¶¶ 47–52), and FullStory's Partner Terms and Conditions (*Id.* ¶ 54), which are incorporated by reference into the complaint. *Daniels-Hall*, 629 F.3d at 998; Dkt. 45-1; Verdin Decl. Exs. B–D.

### III.    ARGUMENT

The second amended complaint is plaintiff's third attempt to criminalize the routine software-based services that FullStory provides to its client (Blue Nile). It should be her last. Plaintiff alleges the same deficient claims: (1) eavesdropping (Cal. Penal Code § 631(a)) and (2) sale or possession of eavesdropping software (*Id.* § 635(a)). Second Am. Compl. ¶¶ 85–107. The Court should dismiss plaintiff's claims with prejudice for two principal reasons. *First*, plaintiff again fails to plausibly allege a critical element of each claim: eavesdropping by FullStory. Without this critical element, plaintiff fails to state any claim upon which relief can be granted, and lacks Article III standing to pursue her claim for the sale or possession of eavesdropping software. *Second*, plaintiff fails to meet her prima facie burden to establish personal jurisdiction over Blue Nile and FullStory because she continues to predicate jurisdiction on the same deficient eavesdropping allegations.

### A.    The Second Amended Complaint Fails to State a Claim.

#### 1.    Plaintiff Fails to State an Eavesdropping Claim Under Section 631(a).

Plaintiff's eavesdropping claim continues to suffer from the same fatal flaws as the last two iterations. Section 631(a) prohibits only unauthorized, third-party access to the contents of an ongoing communication, otherwise known as eavesdropping. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 125–27 (N.D. Cal. 2020). Plaintiff fails to state an eavesdropping claim because (a) FullStory was not a third-party eavesdropper on plaintiff's communications; (b) because Blue Nile was a party to the communication, it cannot be held liable for aiding and abetting eavesdropping; (c) plaintiff predicates the claim, at least in part, on non-content information, and (d) Blue Nile's privacy policy disclosed that service providers like FullStory may collect information on how visitors interact with Blue Nile's website.

##### a)    FullStory Was Not a Third-Party Eavesdropper on Plaintiff's Communications with Blue Nile.

Plaintiff again fails to plausibly allege that FullStory was a third-party eavesdropper, as required to state a claim under section 631(a). Section 631(a) prohibits only the "secret" monitoring of a private conversation, and "[i]t is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Rogers v. Ulrich*, 52

Cal. App. 3d 894, 899 (1975).  Thus, section 631(a) does not extend liability to a person "who is a 'party' to the communication."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("*Facebook III*") (citing *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.")).

 *Rogers* is instructive.  In that case, a city employee had a phone company install a "tape recorder jack" on his phone so that he could, for example, record conversations and "relay parts of [those] conversations . . . to local radio stations for broadcast."  52 Cal. App. 3d at 897.  When a candidate for city council learned that the city employee recorded their conversation without his knowledge, he brought a claim against the city employee under section 631(a).  *Id.* at 896.  The *Rogers* court affirmed dismissal of the claim, holding that the city employee could not be liable because section 631(a) does not prohibit "the recording of a conversation made by a participant rather than by a third party."  *Id.* at 898 (reasoning that a participant recording does not involve "tapping the line," "making an unauthorized connection with the line," or "intercepting the message while in transit."); *see also, e.g.*, *Membrila v. Receivables Performance Mgmt., LLC*, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) (holding that a defendant debt collector could not be liable for recording and monitoring phone calls with the plaintiff because the defendant was a party to the communications).

 FullStory offers website operators the modern-day equivalent of the phone company's tape recorder in *Rogers* and, thus, cannot be a third-party eavesdropper.  FullStory is a vendor that provides a software-based service that allows its client, Blue Nile, to capture a user's interactions with its website, host the data on FullStory's servers, and view and analyze the information.  Second Am. Compl. ¶¶ 45, 48.  In other words, as this Court observed, FullStory "provides a tool—like the tape recorder in *Rogers*—that allows [Blue Nile] to record and analyze its own data in aid of [Blue Nile]'s business."  *Noom*, 2021 WL 1312765, at *5.  Just as the tape recorder in *Rogers* was an extension of the city employee, "as a service provider, FullStory is an extension of [Blue Nile]."  *See id.*  And because FullStory is an extension of Blue Nile, which is a party to the communications at issue, FullStory "is not a third-party eavesdropper."  *Id.*

Nowhere does plaintiff allege in her new complaint that FullStory used plaintiff's data for any purpose other than in its capacity as a service provider to Blue Nile.  Plaintiff does not, for example, allege that FullStory sold her data, used it for advertising purposes, or disclosed it to any third party.  Indeed, plaintiff alleges precisely the opposite.  She alleges that FullStory offers software-as-a-service; that is, Blue Nile is effectively renting space on FullStory's servers where Blue Nile can store data related to website interactions and view that data using FullStory's dashboard.  *See* Second Am. Compl. ¶ 10.  This is no different in kind than if the defendant in *Rogers* had used FullStory's software-based service to record, store, listen to, and analyze his conversations with the plaintiff there.  That FullStory's software-based service is more advanced than a tape recorder—and "not a simple tape recorder," as in *Rogers*, *see* Second Am. Compl. ¶ 55—is immaterial.  The basis for this Court's prior order was plaintiff's failure to allege that FullStory stepped out of its role as Blue Nile's vendor and "used the data [for] itself."  *Noom*, 2021 WL 1312765, at *5.  Plaintiff has not cured that deficiency here, nor could she.

To the contrary, the new allegations reinforce that FullStory, "[a]t the base level," used plaintiff's data "for its client[]," Blue Nile.  *See* Second Am. Compl. ¶ 49.  Specifically, plaintiff alleges that FullStory's software "transmits consumers' data to FullStory for storage," and that FullStory "analyzes [the] data . . . *for its clients*," and thus necessarily "has access to the [data]."  *Id.* ¶¶ 47, 49, 54–55 (emphasis added).  But this Court's prior order already accepted as true that FullStory's software collects data from Blue Nile's website and analyzes such data (and thus necessarily has access to it) on Blue Nile's behalf.  *See Noom*, 2021 WL 1312765, at *1 ("[FullStory] provides software to its clients (including [Blue Nile]) to capture and analyze data so that the clients can see how visitors are using their websites.").  These new allegations therefore do not undercut—and indeed support—the Court's conclusion in its prior order that FullStory, as a service provider, is an extension of Blue Nile, not a third-party eavesdropper.  *See id.* at 5.

FullStory's alleged conduct is thus far afield from the conduct of defendants that courts have found to be third-party eavesdroppers.  In *Facebook III*, for example, the Ninth Circuit held that Facebook could not avail itself of the party exception where Facebook used plug-ins to track the web

browsing activity of logged-out Facebook users on third-party websites, which Facebook compiled and "sold to advertisers to generate revenue." 956 F.3d at 596. And in *Moosejaw*, the district court held that NaviStone, too, could not avail itself of the party exception, where NaviStone allegedly used embedded code to capture the data of visitors to an e-commerce website, which NaviStone used to de-anonymize other data and sell the resulting consumer information to third parties. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019).[4] As this Court observed, Facebook and NaviStone "were independent parties who mined information from other websites and sold it." *See Noom*, 2021 WL 1312765, at *5. Plaintiff makes no such allegations regarding FullStory in her new complaint.

Finally, plaintiff cites a FullStory patent describing certain enhanced capabilities of its software "[i]n some implementations." Second Am. Compl. ¶ 52; *see also id.* ¶¶ 49–51. But this, too, fails to show that FullStory used plaintiff's data for any purpose other than in service of Blue Nile. As an initial matter, plaintiff fails to allege that such capabilities are or were included in Blue Nile's implementation of FullStory's software, or that such capabilities were used with respect to plaintiff's data. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (facts must show "more than the mere possibility of misconduct" to be plausible). In addition, the technology described in the cited patent simply improves the analytics that FullStory's software provides to a client: the technology provides the capability to combine data collected from a website with other data that the *client* provides, such as a user's historical purchase information, so that the client can better analyze its own data.[5] *Id.* ¶¶ 49–52. For example, a client may want to analyze "how different types of users prefer to interact with a given website," and may use this capability to review only "session information related to users that had a historical purchase value of less

---

[4] Second Amended Complaint of Revitch at ¶¶ 24, 29, *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827 (N.D. Cal. May 22, 2019), ECF No. 43. (alleging that NaviStone uses data collected from one website to de-anonymize visitors to other websites, and that it provides marketing services to its clients using this de-anonymized data); *see also id.* ¶¶ 1, 9–46.

[5] The patented technology does not, as plaintiff alleges, provide the capability to "obtain data from other third-party applications." Second Am. Compl. ¶ 52. Rather, as explained in the language that immediately follows this allegation, which plaintiff quotes from FullStory's patent, FullStory provides the capability to obtain data only "from the publisher's [i.e., website operator's] data store." *Id.* (plaintiff's emphasis omitted).

than $X." Verdin Decl. Ex. B col. 25 ll. 12-19. These allegations, to the extent relevant to Blue Nile's implementation of FullStory's software, thus further support the conclusion that FullStory acted only in its capacity as Blue Nile's service provider.

Accordingly, because Blue Nile was a party to plaintiff's communications, and FullStory, as service provider, is an extension of Blue Nile, FullStory is not a third-party eavesdropper and cannot be held liable under section 631(a).

### b)   Blue Nile Cannot Be Held Liable for Aiding and Abetting Eavesdropping.

Blue Nile cannot be liable for aiding and abetting FullStory's alleged eavesdropping because, as the Court held in dismissing the prior complaint, "there is no wrongdoing" to aid and abet. *Blue Nile*, 2021 WL 1312771, at *2. Even if plaintiff had plausibly alleged eavesdropping by FullStory, Blue Nile still cannot be liable under an aiding-and-abetting theory of liability. "Published cases are in accord that section 631 applies only to third parties and not participants [to a communication]" under the well-established party exception. *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012). The only court to grapple with the "settled nature" of this California precedent, and the rule of lenity that applies to section 631 as a penal statute, held that a party to a communication cannot aid and abet eavesdropping of its own communications. *Id.* at 954–56. *Revitch* is an outlier. In that case, the Court failed to reconcile the contrary view, which was based on dicta, with the party exception or the rule of lenity. 2019 WL 5485330, at *2 n.1. Accordingly, Blue Nile, as an alleged party to plaintiff's communications (Second Am. Compl. ¶ 77), cannot be held liable under an aiding-and-abetting theory of liability.

### c)   The Eavesdropping Claim Fails to the Extent It Is Predicated on Non-Content Information.

As before, the Court should dismiss plaintiff's section 631(a) claim to the extent it is predicated on non-content information. Section 631(a) prohibits only the unauthorized collection of the "contents" of any communications. Cal. Penal Code § 631(a) (emphasis added). As the Court previously noted, "[t]he 'content' of a communication is 'the intended message conveyed by the communication.'" *Noom*, 2021 WL 1312765, at *6 (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)). The

1    Court previously dismissed plaintiff's section 631(a) claim "to the extent that it is predicated on non-

2    content information." *Blue Nile*, 2021 WL 1312771, at *2.  And it directed that, "[i]n any amended

3    complaint," plaintiff was to "delineate content from non-content records." *Id.*  Plaintiff has repeated her

4    error by again purporting to base her section 631(a) claim, at least in part, on non-content information.

5        *First*, plaintiff flouts this Court's order by including a catch-all allegation that "any . . .

6    information Plaintiff intentionally provided to Blue Nile while on the website" constitutes "content."

7    Second Am. Compl. ¶ 93.  This is plainly overbroad.  For example, plaintiff alleges that FullStory's

8    software collects IP addresses, which plaintiff has already conceded is "not . . . actionable under CIPA."

9    Dkt. 39 at 10; *see, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d at 1107 (explaining that contents do not

10   include record information, such as addresses, generated in the course of the communication).

11       *Second*, plaintiff incorrectly asserts that the "webpages and URLs" she visited are content.  *See*

12   Second Am. Compl. ¶ 93.  The Ninth Circuit has held that such data "does not constitute the contents of

13   a communication" unless it contains "a search term or similar communication made by the user," as may

14   be present in a URL when using a search engine.  *In re Zynga*, 750 F.3d at 1108–09.  Plaintiff has not

15   alleged that the webpages or URLs at issue here contain such information, for example, by alleging "that

16   the URLs . . . could emanate from search terms inputted into a third-party search engine." *Facebook III*,

17   956 F.3d at 605.  Rather, plaintiff alleges, at most, that the webpages and URLs she visited "revealed

18   only that [she] had clicked on a link" on Blue Nile's website.  *Id.*  That is not content.

19       *Third,* plaintiff alleges that her keystrokes and mouse clicks categorically constitute contents, but

20   plaintiff is wrong.  Second Am. Compl. ¶ 93.  Keystrokes and mouse clicks can be used for a number of

21   purposes, such as navigating up or down on a webpage, without communicating any message, intended

22   or otherwise.  *See In re Zynga*, 750 F.3d at 1106.  Plaintiff must plausibly allege the specific message

23   she intended to communicate through her keystrokes and mouse clicks.  *Blue Nile*, 2021 WL 1312771,

24   at *2.  Because she has failed to do so here, her complaint must be dismissed.

25             **d)**     **Blue Nile's Privacy Policy Forecloses Plaintiff's Claims.**

26       Plaintiff's section 631(a) claim also fails because Blue Nile's privacy policy disclosed that its

27   service providers, like FullStory, collect data from website visitors.  As the Court noted before, section

28

631(a) imposes liability only "if a person *secretly* listens to another's conversation." *Noom*, 2021 WL 1312765, at *4 (emphasis added) (citing *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985)). This is because "'[e]avesdropping' is the problem the Legislature meant to deal with" in enacting section 631. *Rogers*, 52 Cal. App. 3d at 899. And to "'eavesdrop' is 'to listen secretly to what is said in private.'" *Id.* (quoting Webster's 7th New Collegiate Dictionary (1972)).

FullStory's data collection was not done in secret. The Court previously concluded that FullStory was an extension of Blue Nile because it was acting in its role as a *service provider* to Blue Nile. *See Noom*, 2021 WL 1312765, at *5 ("[A]s a service provider, FullStory is an extension of [Blue Nile]."). The privacy policy for Blue Nile's website expressly disclosed to users like plaintiff that data regarding their interactions with the website may be collected and that this data could be shared with Blue Nile's service providers. Dkt. 37-2 at 2–3. For example, the policy contains a section that describes the data collection that occurs "when you navigate to our site." *Id.* (capitalization omitted). The policy discloses that the categories of data collected from website visitors includes "[i]nformation gathered through cookies and other tracking technology," "[d]evice and browser information," "[i]nformation gathered through web server logs," and "[g]eneral location information." *Id.* The policy further provides that this data is shared with "service providers." *Id.* The gravamen of plaintiff's complaint, meanwhile, is that when plaintiff "accessed Blue Nile's website, [her] electronic communications with Blue Nile"—*i.e.*, her interactions with Blue Nile's website—were "captured, stored, and analyzed by FullStory." Second Am. Compl. ¶ 77. This is precisely what was disclosed in Blue Nile's privacy policy.

In sum, the disclosures made in Blue Nile's privacy policy render implausible plaintiff's conclusory allegation that FullStory's data collection was surreptitious. *See* Second Am. Compl. ¶¶ 45, 77. For this additional reason, the Court should dismiss plaintiff's eavesdropping claim.

### 2. Plaintiff Lacks Standing to Pursue—and Fails to State—a Claim for the Sale or Possession of Eavesdropping Software Under Section 635(a).

Plaintiff lacks standing to bring, and fails to state, a claim against FullStory for the sale of, and Blue Nile for the possession of, a "device" that is "primarily or exclusively designed or intended for eavesdropping upon the communication of another." *See* Cal. Penal Code § 635(a).

*First*, plaintiff continues to lack both statutory and Article III standing to bring a claim under section 635(a) for the same reasons this Court articulated in dismissing the prior complaint.  Only those who have "been injured by a violation of this chapter [*i.e.*, CIPA], may bring an action against the person who committed the violation."  Cal. Penal Code § 637.2(a).  In the same vein, a plaintiff must have "suffered an injury in fact" to have Article III standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Plaintiff continues to base her statutory and Article III standing on FullStory's alleged eavesdropping.  *See* Second Am. Compl. ¶¶ 1, 40–46, 58, 84.  As explained above (*supra* at III.A.1.a), plaintiff fails to plausibly allege that FullStory was an eavesdropper and, thus, has not stated a claim under section 631(a).  Without such a predicate violation of CIPA, plaintiff "does not have a private right of action" under section 635(a) and "lacks Article III standing," as this Court found in dismissing the prior complaint.  *Blue Nile*, 2021 WL 1312771, at *3.

Plaintiff's new allegation that a "violation of section 635 [is] sufficient to confer Article III standing" is both irrelevant and wrong.  *See* Second Am. Compl. ¶ 106.  It is irrelevant because, even assuming that a "bare procedural violation" of section 635(a) were sufficient to establish an injury in fact, contrary to established law (*Spokeo*, 136 S. Ct. at 1549), plaintiff's claim still rests on her deficient eavesdropping allegations: without plausibly alleging that the use of FullStory's software amounts to eavesdropping, as here, the software cannot be an eavesdropping "device" under section 635(a).  Plaintiff's new allegation is also wrong.  Plaintiff does not allege any injury from the mere sale or possession of an alleged eavesdropping device, only the later *use* of it.  *See* Second Am. Compl. ¶¶ 99–107.  And it would be "constitutionally problematic" to permit a plaintiff to bring a section 635(a) claim in such circumstances because it would mean that "plaintiffs who suffered no injury in fact would still be able to sue."  *See Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *5 (S.D.N.Y. July 12, 2018) (interpreting analogous federal statute).

*Second*, plaintiff fails to state a claim because she does not plausibly allege that FullStory's software is a "device" within the meaning of section 635(a).  Plaintiff alleges in conclusory fashion that "FullStory's code is a 'device.'"  Second Am. Compl. ¶ 104.  But she has not "include[d] facts in [her] pleading to show why [that] is so."  *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937

(N.D. Cal. 2015) (rejecting a similarly conclusory allegation that software used to collect data from a website is a "device" and thus a "contrivance" for purposes of section 631(a)).  Nor could she.  The Oxford English Dictionary defines "devices" as "an invention, contrivance; esp. a mechanical contrivance (usually of a simple character) for some particular purpose."  *Device*, Oxford English Dictionary, https://www.oed.com/view/Entry/51464 (last visited May 25, 2021).  FullStory's software code is not a "mechanical contrivance," and thus is not a "device."  While "device" may have other meanings, the rule of lenity that applies to section 635(a), as a penal statute, requires that any ambiguities be construed in FullStory's favor.  *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (applying rule of lenity to civil application of a penal statute).

*Third*, plaintiff also fails to state a claim because she does not plausibly allege that FullStory's software is "primarily or exclusively designed or intended for eavesdropping," as required under section 635(a).  To the contrary, plaintiff previously alleged that FullStory's software is designed to provide "marketing analytics" and to "help businesses improve their website design and customer experience," not to eavesdrop.  Compl. ¶¶ 14–15.  Perhaps recognizing that these admissions defeat plaintiff's claim under section 635(a), plaintiff removed them from her first and second amended complaint.  But plaintiff cannot avoid dismissal "by simply deleting [them] from [her] amended complaint."  *J. Edwards Jewelry Distrib., LLC. v. Wells Fargo & Co.*, 2019 WL 2329248, at *4 (N.D. Cal. May 31, 2019) (considering prior allegations in dismissing amended complaint with prejudice).  Plaintiff's admission supports the conclusion that FullStory's software is best understood as "part of [the] routine internet functionality" that makes digital commerce possible.  *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) ("*Facebook II*") ("[W]ebsites routinely embed content from third-party servers in the form of videos, images, and other media, as well as through their use of analytics tools, advertising networks, code libraries and other utilities.").

*Fourth*, plaintiff fails to state a claim against Blue Nile because she alleges only that Blue Nile "possesses" an eavesdropping device, which is not prohibited by the statute.  *See* Second Am. Compl. ¶ 103.  Section 635(a) applies to any person who "manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another" any eavesdropping device.

1   Cal. Penal Code § 635(a).  The statutory term "possesses" is ambiguous in light of the narrower terms,

2   such as "manufactures" and "sells," that surround it.  *See Yates v. United States*, 574 U.S. 528, 537

3   (2015) (finding "tangible objects" ambiguous in light of "the specific context in which that language is

4   used").  When applying the related canons that a general word should be construed in a way that is

5   similar to the surrounding words (noscitur a sociis) or the more specific words in a list (ejusdem

6   generis), "possesses" must be construed as covering only those entities involved in the manufacture or

7   sale of an eavesdropping device.  *See id.* at 544–45.  It cannot be construed as broadly covering any

8   entity, like Blue Nile, that is alleged to merely possess such a device.

9   **B.   Blue Nile and FullStory Are Not Subject to Personal Jurisdiction In California.**

10   Plaintiff once again fails to meet her prima facie burden to establish specific jurisdiction over

11   Blue Nile and FullStory because plaintiff continues to predicate specific jurisdiction on her deficient

12   eavesdropping allegations (*supra* at III.A.1).[6]  *See* Second Am. Compl. ¶ 15 (alleging, for example, that

13   FullStory "knows it is wiretapping users in California").  For that reason, the Court should again find

14   that, because plaintiff did not plausibly plead wiretapping, plaintiff has not met her prima facie burden to

15   establish specific personal jurisdiction over either defendant.  *Blue Nile*, 2021 WL 1312771, at *3.

16   Even if plaintiff had plausibly alleged wiretapping by FullStory, such allegations would not

17   provide a basis for specific jurisdiction over FullStory of Blue Nile.  *Id.* (assuming without deciding that

18   plausible wiretapping allegations could confer personal jurisdiction).  To justify specific jurisdiction

19   over a defendant in suits sounding in tort, as here, a plaintiff must show that (1) the defendant

20   "purposefully directed" its activities toward the forum state, and (2) the claims "arise[] out of or relate[]

21   to" the defendant's forum-related activities.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,

22   802 (9th Cir. 2004).  Only if the plaintiff makes that showing does the burden then shift to the defendant

23   to show that (3) the exercise of jurisdiction would not be reasonable.  *Id.*

---

[6] Plaintiff does not allege that the Court has general jurisdiction over Defendants.  *See* Second Am.
Compl. ¶¶ 13, 15–18 (alleging personal jurisdiction only under theories of specific jurisdiction); Dkt. 39
at 1 (arguing only that "[t]he Court has specific personal jurisdiction over defendants.") (capitalization
omitted).

*First*, plaintiff fails to show that FullStory, a Georgia-based company incorporated in Delaware, purposefully directed its activities toward California. To show purposeful direction, plaintiff must, at a minimum, allege facts showing that FullStory's alleged wiretapping was "expressly aimed" at California, and that FullStory caused harm that it "knows is likely to be suffered in" California. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citations omitted). While plaintiff alleges conclusory statements in this regard, those statements are insufficient because they are premised on *Blue Nile's* conduct. Second Am. Compl. ¶¶ 7, 15 (alleging that "Blue Nile's customer base" comprises California residents, and that "Blue Nile actively advertises its products in California"). As this Court recognized, "[a] vendor's selling a product to Blue Nile—even if Blue Nile had substantial business [in California] and the vendor knew it—does not establish specific personal jurisdiction over the vendor." *Blue Nile*, 2021 WL 1312771, at *3. To be sure, plaintiff alleges that FullStory "wiretaps geolocation information." Second Am. Compl. ¶ 15. But this allegation does not help plaintiff: if FullStory were only aware that its wiretap reached California *after* geolocation data had been collected, then that fails to show that FullStory expressly aimed its conduct at California, or knew that harm was likely to be suffered there.

Likewise, plaintiff fails to show that Blue Nile, a Washington-based company incorporated in Delaware, purposefully directed its activities toward California. Plaintiff relies on the fact that California has a substantial market, and attempts to infer from that and other inconsequential allegations that Blue Nile, as the operator of a website with a "national viewership," necessarily targeted California in particular. Second Am. Compl. ¶¶ 15–18. This is insufficient. At a minimum, plaintiff must show that California is an "integral component" of Blue Nile's "business model and its profitability." *Voodoo SAS v. SayGames LLC*, 2020 WL 3791657, at *4 (N.D. Cal. July 7, 2020) (finding no purposeful direction where company distributed gaming app in the United States more generally). Plaintiff has failed to do so. This Court should reject plaintiff's attempt to create "*de facto* universal jurisdiction" over a website operator in *any* large market where its website is accessible, which is incompatible with the Supreme Court's personal jurisdiction jurisprudence. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–02 (7th Cir. 2014).

*Second*, plaintiff fails to show that her claims arise out of or relate to FullStory's or Blue Nile's forum-related activities.  None of FullStory's or Blue Nile's challenged conduct has anything to do with California in particular.  Although plaintiff experienced her alleged harm in California, it is not tethered to the forum in a "meaningful way" because plaintiff would have experienced the same alleged harm wherever else she might have accessed Blue Nile's website.  *See Walden v. Fiore*, 571 U.S. 277, 290 (2014).  The effects of FullStory's and Blue Nile's alleged conduct on plaintiff is therefore "not connected to the forum State in a way that makes those effects a proper basis for jurisdiction."  *Id.* (no jurisdiction over a Georgia defendant where plaintiffs would have experienced the same injury "wherever . . . they might have traveled and found themselves"); *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (no jurisdiction over a defendant in California  where plaintiff's alleged injury "would follow him wherever he might choose to live or travel").

*Third*, while plaintiff has not met her burden under the first two prongs, the exercise of specific jurisdiction over FullStory and Blue Nile would also be unreasonable.  All seven of the Ninth Circuit's reasonableness factors weigh heavily against exercising specific jurisdiction: (1) FullStory and Blue Nile did not purposefully inject themselves into California's affairs, as set forth above (*supra* at III.A.1); (2) defending claims in California will, and already has, placed an undue burden on FullStory, a Georgia-based company, and Blue Nile, a Washington-based company, with no direct ties here; (3) the claims conflict with the sovereignty of the state where FullStory is headquartered (Georgia) because there are no analogous claims under Georgia law, *see* Ga. Code Ann. § 16-11-66(a) (requiring only one party's consent to wiretapping); (4) California does not have a strong interest in regulating FullStory's conduct in Georgia and Blue Nile's conduct in Washington; (5) no particular judicial efficiencies are gained in California; (6) this forum is not important to plaintiff's interest in convenient and effective relief, as plaintiff's counsel has demonstrated the ability to bring similar wiretapping suits throughout the country; and (7) Georgia (as to FullStory) and Washington (as to Blue Nile) or Delaware present adequate alternative forums.  *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011).

1

## IV.    CONCLUSION

2

For the foregoing reasons, this Court should dismiss plaintiff's second amended complaint as to

3

Blue Nile and FullStory with prejudice.

4

DATED:  May 27, 2021

5

COVINGTON & BURLING LLP

By:  */s/ Emily Johnson Henn*

6

7

EMILY JOHNSON HENN (SBN 269482)
ehenn@cov.com
COVINGTON & BURLING LLP

8

3000 El Camino Real

9

5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112

10

Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

11

SIMON J. FRANKEL (SBN 171552)

12

sfrankel@cov.com
MATTHEW Q. VERDIN (SBN 306713)

13

mverdin@cov.com
JENNA L. ZHANG (SBN 336105)

14

jzhang@cov.com
COVINGTON & BURLING LLP

15

Salesforce Tower

16

415 Mission Street, Suite 5400
San Francisco, CA 94105-2533

17

Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

18

19

*Attorneys for Defendants*

20

*Blue Nile, Inc. and FullStory, Inc.*

21

22

23

24

25

26

27

28